SOLOMON STRAUS *vs.* GEORGE AUGUST ROST, by his
next friend ADOLPH V. DIEDEL.

*Construction of Will—Contingent estate—Proceedings in*
*Equity—Mistake—Petition to Rescind Auditor's account,*
*Ratified through Mistake.*

A testator gave all his property to his wife during widowhood, but if
she married again he gave her only what the law allowed her; and
then provided as follows: "and the residue of my estate I give,
devise, and bequeath absolutely to all my children, to be equally
divided between them, share and share alike, the issue or descend-
ants of any deceased child or children to take *per stirpes*, and not
*per capita*, the share such child or children would have respectively
taken had such child or children survived." The widow having
married again, it was HELD:

That upon her marriage the surviving child of a son of the testator
who died after the testator's death and before the widow's re-mar-
riage, became entitled by virtue of the will, to the share of the
estate which his father would have been entitled to had he survived
that event; and that no conveyance, assignment, or incumbrance
placed upon the property by his father in his life-time could affect
that right.

After the testator's death a bill was filed for a sale of the property
left by him, to which bill said child of testator's deceased son was
made a party defendant, and being an infant, answered by guardian.
A decree for a sale was passed, and sales were made of different
parcels, which were reported and ratified. Several accounts dis-
tributing the proceeds were stated and ratified, the last ratification
having occurred in September, 1882. In these accounts no portion
of the proceeds of sale was distributed to said child, but the whole
of his share was allotted to S. who was the purchaser of the prop-
erty, and claimed this share under a mortgage of his interest in the
property made by the father of said child. In February, 1887, the
child, by his next friend, filed his petition in the case against S.
praying that the several audits be rescinded and that the petitioner
might be allowed his share of the proceeds of sale, with interest.
HELD:

That the case was one where the Court, through mere inadvertence or mistake, and without having its attention called to the subject, ratified the accounts assailed by the petition, and the petition ought to be sustained.

APPEAL from the Circuit Court of Baltimore City.

The petition of the appellee, referred to in the opinion of the Court, is as follows:

The petition of George August Rost, an infant, by Adolph V. Diedel, his next friend, humbly shows unto your honor, that by the true construction of the will of George Rost, filed with the bill in this cause, Sophia Rost, his widow, became a tenant for life in his whole estate, defeasible upon her marriage, upon which event the whole of the estate was to be divided as though the testator had died intestate, that is to say, one-third of the personalty absolutely to Sophia, and one-third of the realty to go to her for life, the balance or remainder of the estate was "to be divided equally among the children of the testator, share and share alike, the descendant or descendants of any deceased child to take *per stirpes* and not *per capita,* the share such child or children would have respectively taken had such child or children survived."

And your petitioner further shows, that it appears by the averments of said bill of complaint, and the proof taken thereunder, that the said George Rost left surviving him his widow, Sophia Rost, and the following children, viz: Rosa Rost, who died intestate and without issue, within a few weeks after her father; John Rost, Frederick Rost, George Rost and August Rost, the latter of whom died in the year 1877, leaving as his sole issue your petitioner, George August Rost, who was nineteen years of age on the second day of February, 1887.

And your petitioner shows, that under the will of his grandfather, George Rost, his father, August Rost, took a vested remainder in one-fifth of two-thids of the personal

estate, and one-fifth of the whole of the real estate, subject to be divested by the death of his said father, August, (prior to the marriage of his grandmother, Sophia,) leaving issue.

And your petitioner further shows, that the said Sophia did, in the month of April, 1881, intermarry with one Mr. Henry Kaiser, and that by reason of the death of said Rosa Rost, intestate and without issue, and the death of his father, August Rost, in 1877, and by reason of the marriage of the said Sophia in 1881, your petitioner is entitled to one-fourth of the two-thirds of the said personal estate of George Rost, and one-fourth of the whole real estate, subject only to the life estate of said Sophia Kaiser, in one-third thereof.

And your petitioner shows, that as he takes interest by way of substituted remainder, by the terms of the will of said George Rost, his estate and claim is wholly unaffected by any conveyance, guaranty, or other paper, made either by said Sophia Rost or August Rost.

And your petitioner shows, no money was audited to him of the proceeds of sale, but that, on the contrary, no notice was taken of his rights in the premises in the several audits passed in this cause.

And your petitioner shows, that he is entitled to receive the same sums as his uncle, George Rost, to whom was allowed the sum of two thousand two hundred and ninety-three dollars and twenty-six cents, ($2293.26,) in an audit filed June 24, 1881, and ratified July 8, 1882; the sum of eighteen hundred and forty-two dollars and eleven cents, ($1842.11,) in an audit filed July 28, 1881, and ratified August 6, 1881; the sum of one thousand six hundred and forty-three dollars and fifteen cents, in an audit filed June 23, 1882, and ratified on the 8th day of July, 1882, and the sum of three thousand and nine dollars and ninety-five cents, ($3009.95,) in an audit filed September 1, 1882, and ratified September 11, 1882, making

in all the sum of eight thousand seven hundred and eighty-eight dollars and forty-seven cents, ($8788.47;) and the said Solomon Straus, to whom the balance of the said funds were audited as mortgagee under a mortgage from Sophia Rost, John and Frederick Rost, and their wives, further agreed to pay and did pay to the guardian of said George Rost the further sum of fourteen hundred dollars, in lieu of the further proceeds of sale, and in order to satisfy the said guardian, and keep exceptions from being made to the sales, wherein the said Solomon Straus was purchaser of property which he swore in the proof in this cause was worth between $175 and $200,000 for about $60,000, and also to prevent exceptions to the said several audits.

And your petitioner further shows, that it appears no similar allowance was made to your petitioner as was made to George Rost, his uncle, because it was supposed by the auditor that the interest of your petitioner had been divested by reason of the signing of guaranty to said Solomon Straus by his father, August Rost; but this petitioner avers that said conclusion was wholly erroneous by reason of the fact that the indebtedness incurred on the said guaranty was all paid, and the indebtedness, as proven by said Solomon Straus in this cause, was incurred under and by reason of the mortgage of 1878, referred to in these proceedings as the mortgage to Straus, made by Sophia Rost, John and Frederick Rost, and their respective wives, to which mortgage said August Rost was not a party, it being made after his death, and other security being added, in lieu of his signature, to hold the said Straus harmless from any other loss, by reason of sales to said Sophia Rost.

And this petitioner further shows, that even if it had not been true, as averred above, that the said indebtedness under the guaranty aforesaid, as proved by said Solomon Straus, was paid, and the suretyship of said August

Straus *vs.* Rost.

therefor, thereby terminated, yet inasmuch as your petitioner acquired his said rights by reason of the death of said August, leaving issue prior to the mortgage of the widow of the testator, as substituted remainderman under the will of George Rost, whose estate was entirely divested by reason of the happening of the said events, no signature or conveyance made by said August could in any way affect your petitioner.

Wherefore, he prays that your Honor may pass an order, directed unto Solomon Straus, requiring him to answer the premises within fifteen days from the service of a copy of this petition, and show cause why an order should not be passed rescinding the several audits heretofore referred to, and allowing your petitioner a sum of money equal to that paid by said Straus and Morris to George Rost, the uncle of this petitioner, together with interest from the time of the ratification of the respective accounts.

The case is further stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, YELLOTT, MILLER, ROBINSON, and BRYAN, J.

*Edward Otis Hinkley*, for the appellant.

That a decree cannot be vacated by a petition after a term has passed, but a regular bill of review must be filed, is well settled. *Downes vs. Friel*, 57 *Md.*, 531; *Thruston vs. Devecmon*, 30 *Md.*, 217; *Herbert vs. Rowles*, 30 *Md.*, 278; *Burch vs. Scott*, 1 *G. & J.*, 393; *Tomlinson vs. Mc-Kaig*, 5 *Gill*, 256; *Bowie vs. Berry*, 1 *Md. Ch. Dec.*, 455; *Berrett vs. Oliver*, 7 *G. & J.*, 207; *Bolgiano vs. Cooke*, 17 *Md.*, 396; *Billingslea vs. Baldwin*, 23 *Md.*, 86; *Earle vs. Turton*, 26 *Md.*, 23.

Even supposing the petition to be a bill of review, in this case the petitioner attempts to bring in questions of fact relating, however, to the validity of what has been done. It is clear that this cannot be now done. See

*Shelton vs. Van Kleeck,* 106 *U. S.,* 532, and the cases there cited. 3 *Black. Com., chap.* 27, at the end.

The time has passed, six years at least, for any writ of error or appeal—nine months being the limit formerly, and two months now—and there is no right to any relief at this time, unless there be an express reservation by statute ; and there is none in this case. In *Taylor vs. Charter Oak Life Ins. Co.,* 3 *McCrary Ct. Ct.,* 484, it was held that the bill having been brought later than the time allowed for writ of error, must ·be dismissed. So ·in *Littleton's Appeal,* 93 *Pa. St.,* 177 : A minor coming of age in 1876, filed a bill for errors in 1863—for error of law apparent on face of record—*held too late.*

Even for fraud, bill must be brought within the time allowed for suing out writ of error ; unless some very cogent reason is shown for delay. *Sloan vs. Sloan,* 102 *Ill.,* 581 ; *Brewer vs. Bowman,* 3 *J. J. Marsh.,* 492.

As to the construction of the will, there is but one word giving any, even the slightest, ground for an argument in favor of the petitioner, and that is the word *survived,* at the end of a long phrase—a common phrase in wills—and that has often been construed to mean *survived* the testator. Besides, the law favors early vesting, and there is nothing in the whole context of this will to show that the testator intended to prevent the alienation by his children of their shares—their remainders—as soon as the testator himself died. It appears upon the face of this will that his wife and his own children were the primary objects of his bounty. *Tayloe vs. Mosher,* 29 *Md.,* 443 ; *Meyer vs. Eisler,* 29 *Md.,* 33 ; *Keerl vs. Fulton,* 1 *Md. Ch. Dec.,* 532 ; *Branson. vs. Hill,* 31 *Md.,* 187 ; *Crisp vs. Crisp,* 61 *Md.,* 149 ; *Moore vs. Lyons,* 25 *Wendell,* 119 ; *Ross vs. Drake,* 37 *Penn.,* 373 ; *Hansford vs. Elliott,* 9 *Leigh,* 79 ; *Blanchard vs. Blanchard,* 1 *Allen,* 223 ; *Byrnes vs. Stillwell,* 5 *Cent. Rep.,* 402.

In *Engel vs. State,* 65 *Md.,* 539, 542, the testator directed that his executors after the death of his wife, should sell

his estate and divide the proceeds amongst all his children, share and share alike, (naming them) "or their share to the children of them that *may have died.*" The only subject of review on the appeal was, whether judgments in attachment against the husband of one of the children, took the share of that child; and the Court held that as the husband had, under the law of Maryland, only a life estate in the property of his wife, her child, for whose use the suit was brought, was entitled, the husband being dead. This point was decisive of the case, and the opinion of the Court as to the construction of the will made no difference. The construction, however, was that as a large portion, if not much the larger portion *of the estate was not to be divided* until the death of the widow, that was the period to which the words "may have died," refer. It is also to be observed that as the executors were directed to sell and divide the proceeds, the performance of this duty fixed the question as to the intention of the testator. This necessitated the postponement of the vesting of the estate. *Delafield vs. Shipman,* (*N. Y.,*) 5 *Cent. Rep.*, 392.

The reference which is made in the opinion in *Engel vs. State,* 65 *Md.*, 545, to the principle of decision in the cases of *Hervey vs. McLaughlin,* 1 *Price,* 264; *LeJeune vs. LeJeune,* 2 *Keen,* 701; *Galland vs. Leonard,* 1 *Swan.,* 161, and to 3 *Jarman on Wills,* 612—shows plainly the ground of the decision to have been the time of sale and division, which had been stated by the testator in each of those cases. It is to be noticed that in this case no sale is directed to be made, no executors or trustees have to divide proceeds or to do anything else. See also *Branson vs. Hill,* 31 *Md.*, 181, 187.

The chapter of Mr. Jarman on this subject does not represent the state of the law in the United States, nor indeed does it rightly set forth even the English cases. The case of *Moore vs. Lyons,* 25 *Wendell,* 119, gives a

good history of the English cases. The cases in Maryland are numerous and are uniform in their language as to early vesting. *Meyer vs. Eisler*, 29 *Md.*, 33 ; *Tayloe vs. Mosher*, 29 *Md.*, 443 ; *Lemonnier vs. Godfroid*, 6 *H. & J.*, 472 ; *Fairfax vs. Brown*, 60 *Md.*, 50 ; *Crisp vs. Crisp*, 61 *Md.*, 152.

See also Judge COOLEY's opinion in *Eberts vs. Eberts*, 42 *Mich.*, 404 : "The general rule of construction of wills requires the words *'surviving children'* to be interpreted as intending those who were surviving at the death of the testatrix." In that case the testatrix devised property "to the surviving children of [her] brothers." The Court referred to *Hansford vs. Elliot*, 9 *Leigh*, 79 ; *Martin vs. Kirby*, 11 *Grattan*, 67.

*J. Hill Dawson*, and *J. Wilson Leakin*, for the appellee.

The appellant contends that the words of survivorship in the clause of the will to be construed, refer to surviving the testator ; the appellee to surviving the second marriage of the widow. The whole clause, which is the subject of construction, is brought into existence only on one contingency : "But if she do marry again, then, immediately upon her second marriage, I give, &c." How is it possible then in a clause which is only called into being on the second marriage of the testator's widow, to refer a remainder and words of survivorship to outliving the testator, without referring all of the events mentioned in said clause, to the same period? which would in effect make the testator contemplate his wife's committing bigamy in his own life-time.

It is further to be noted that the gift and devise was only to take effect "immediately upon her second marriage," and to take effect in possession, among people then *in esse,* his children who were alive and the descendants of the dead ones. Some stress was sought to be laid on

the words in the devise to the widow, "such part of my estate as she would have taken under the laws of the State of Maryland had I died intestate," but they merely refer to the *quantum* of the estate, and are equivalent only to saying, one-third of my personalty and one-third of my realty for her life, and cannot control the initial words of the clause heretofore mentioned.

The contingency contemplated was by no means sure to occur ; widows do not always marry again, and the testator's intent was that in case of his widow's re-marrying, such of his children who were then alive should have a share of his estate, and the descendants of such as were dead at the time, should have their parents' share. This is the plain and obvious meaning of the clause ; and it is submitted that it would be straining both the language and intent to give to it any other.

But the question is not now one open to discussion in this State, having been fully determined in the case of *Engel vs. State, use of Geiger,* 65 *Md.,* 543–5.

The second ground of demurrer, viz., that it is now too late to rescind the auditor's report is based upon the notion that the decree cannot be attacked, except within nine months after the enrolment.

This is a fallacy, as appears by the case of *First National Bank vs. Eccleston,* 48 *Md.,* 156, 157, where the Court holds that a decree entered the 11th of October, 1872, should be vacated and the enrolment stricken out on petition, although none was filed until December, 1874.

In the case of *Patterson vs. Preston,* 51 *Md.,* 190, a sale was reported by a trustee to certain persons, who were parties to the cause, and all *sui juris* in 1868, in which year, an auditor's report of the proceeds was finally ratified. In 1876, eight years after the ratification of the sale and audit, a petition was filed to vacate the ratification of the sale and the audit, on the ground that the report of sales was made by mistake, and that the persons

reported as purchasers had never, in point of fact, become such. The Court of Appeals entertained no doubt of the jurisdiction to vacate the enrolment of both orders, and reversed the order of the Circuit Court dismissing the petition.

In the present case, the party filing the petition was an infant at the time of the passing the orders complained of, and also at the time of filing the petition, hence there can be no *laches* or negligence imputable to him ; and this ground of demurrer was properly overruled.

The third ground of demurrer is equally untenable ; it is that a petition is not the proper paper to file, but that the paper should be called a bill of review.

This, like the last, is a wholly technical defence and ought not be permitted to stand in the way of the Court of equity, rectifying the mistake, obviously made by its own officer in the auditor's report, by which the money of this infant has been placed in the hands of a person having no possible title to it.

It is laid down as elementary law that where a decree has been passed without a hearing on the merits, a Court of equity in the exercise of a sound discretion has power to vacate the enrolment, and this may be done by petition. *First National Bank vs. Eccleston,* 48 *Md.,* 155 ; *Herbert vs. Rowles,* 30 *Md.,* 278 ; *Patterson vs. Preston,* 51 *Md.,* 190 ; *Pfeaff vs. Jones,* 50 *Md.,* 269 ; *Gechter vs. Gechter,* 51 *Md.,* 191 ; *Downes vs. Friel,* 57 *Md.,* 533–4.

If section 32, of Article 66, of the Revised Code, giving infants a day in Court within six months after their attainment of the age of twenty-one applies, then the Court is not obliged to wait until the infants come of age. *Richmond vs. Tayleur,* 1 *Peere Wms.,* 737.

For if it were otherwise the party might spend the money before the infant attained his majority and his relief then be wholly fruitless.

MILLER, J., delivered the opinion of the Court.

This appeal presents two questions, one of which depends upon the construction of the will of George Rost. The testator died in December, 1871, and after providing for the payment of his debts and funeral expenses, the whole of his will is as follows :

"I devise and bequeath unto my beloved wife, Sophia, so long as she remains my widow, and if she do not marry again, then for and during the term of her natural life, all the property of every nature and kind, whether real, personal or mixed, and inclusive of all claims, whether legal or equitable, which I now have and possess, or which I I may have, possess, or be in any manner entitled at the time of my death. But if she do marry again, then, immediately upon her second marriage, I give, devise and bequeath to her such part of my estate only as she would have been entitled to under the laws of the State of Maryland had I died intestate; and the residue of my estate I give, devise and bequeath absolutely to all my children to be *equally divided* between them, share and share alike, the issue or descendants of any *deceased* child or children to take *per stirpes* and not *per capita,* the share such child or children *would have* respectively taken had such child or children *survived ;* but if she should not marry again, then I give, devise and bequeath absolutely upon her death, all my estate and property of every nature and kind to all my children, to be *equally divided* between them, share and share alike, the issue or descendants of any *deceased* child or children to take *per stirpes* and not *per capita,* the share such child or children would have respectively taken had such child or children *survived.*"

The will was executed about eight months before he died, and at the time of his death the testator left surviving him five children, four sons and one daughter. The daughter died a few weeks after her father, an infant, intestate, and unmarried. One of the sons, August, died

in 1877, leaving the appellee his only child and heir-at-law, who is now about nineteen years of age. The widow married a second time in April, 1881. Upon this state of facts the question arises whether upon this second marriage of the widow the appellee took *by virtue* of the will the share of the property which would have gone to his father in case he had *survived* that event, or whether this share vested absolutely in the *father* upon the death of the testator, and therefore became subject to an incumbrance which the father had placed upon it in his life-time. In other words, is the survivorship mentioned in this will to be referred to the *death of the testator* or to the *second marriage* of his widow.

Cases are numerous in which this subject has been discussed and adjudicated with reference to particular wills, the intention of the testator in each case being what the Court endeavors to ascertain. The law no doubt favors the vesting of estates, and as between a vested and contingent estate the intent to make it the latter must be expressed in terms so plain as to leave no room for construction. *Tayloe vs. Mosher*, 29 *Md.*, 443. So again as a general rule, the Courts will, in the absence of plain expressions, or an intent plainly inferrible from the terms of the will, adopt the earliest time for the vesting where there is more than one period mentioned. It is a question of intention, and the testator has ample power to fix the period of vesting to suit himself, (always within the time the rule of law fixes), but he must indicate his wish with *reasonable certainty*, for if he does not the law will presume he intended the earliest time. *Crisp vs. Crisp*, 61 *Md.*, 152. Now applying these general rules to a case like this, it may be taken as an established rule of law, that where there is simply a bequest to A, and in *case of his death*, or *if he die*, to B, if A survives the testator, he will take absolutely. 3 *Jar. on Wills*, 606. But although in case of an *immediate* gift it is generally true that a

Straus *vs.* Rost.

bequest over in the event of the death of the preceding legatee, refers to that event occurring in the life-time of the testator, yet this construction is only made *ex necessitate rei* from the absence of any other period to which the words can be referred, as the testator is not supposed to contemplate the event of himself surviving the objects of his bounty ; and consequently, where there is another point of time to which such dying may be referred (as obviously is the case where the bequest is to take effect *in possession* at a period subsequent to the testator's decease), the words in question are considered as extending to the event of the legatee dying in the interval between the testator's decease and the period of *vesting in possession.* 3 *Jar. on Wills,* 611. In our opinion the present case falls within the rule thus laid down by *Jarman,* and which we have approved in the recent case of *Engel vs. State, use of Geiger,* 65 *Md.,* 539. The testator gave all his property to his wife *during widowhood,* but if she married again he gave her only what the law allowed her, and upon the happening of that event he *then* gave the residue to his children to be *equally divided* between them, the child of any *deceased* child to take the share which such child *would have taken* had he *survived.* Clearly so long as the widow remained unmarried the children were to get nothing *in possession,* but when that event took place the residue of the property was to be *divided,* they were then to come *into possession,* and the child of a deceased child was to take the share his father *would have taken had he survived that event.* This, it seems to us, is the plain reading of this will. The testator has, in our opinion, indicated, *with reasonable certainty,* the time at which he wished the residue of his estate *to vest,* and that was upon the second marriage or death of his widow. The case is clearly covered by the reasoning and decision in *Engel vs. State, use of Geiger,* which was decided after full consideration and by a very full Court. That case has been so

recently decided that no review of it is necessary. It follows that upon the marriage of the widow the appellee became entitled, by virtue of this will, to the share of the estate which his father would have been entitled to had he survived that event, and that no conveyance, or assignment, or incumbrance placed upon the property by his father in his life time, could affect that right.

The next question is, can the appellee obtain relief under the *petition* he has filed in the case, to which a demurrer has been interposed? In determining this question we must consider the proceedings in the case so far as they are disclosed by the record, or have been conceded in argument.

It appears then that on the 2nd of June, 1880, a bill was filed for the sale of the property left by the testator. It is not necessary to state at large its averments or the grounds on which the sale was asked. To this bill the appellee, then an infant, was made a defendant, and answered in the usual form by his guardian. The decree for the sale was passed in July, 1880, *before* the widow's second marriage. The estate was a large one and the trustee from time to time made sales of different parts, and these were duly reported and ratified. Several accounts distributing the proceeds, were also stated and ratified, the last ratification having occurred in September, 1882. In these accounts no portion of the proceeds of sale was distributed to the appellee, nor was any notice taken of his rights, but the whole of his share was allotted to the appellant, Straus, who was the purchaser of the property, and claimed this share under a mortgage of his interest in the property *by the father* of the appellee. On the 21st of February, 1887, the appellee by his next friend, filed a petition in the case against Straus setting forth the above facts, and praying that these several audits may be rescinded, and that the, petitioner may be allowed his share of the proceeds with interest. Is he entitled to relief under this petition?

It is to observed that the petition does not attack the decree nor impeach the title of the purchaser thereunder. Nor does it assail the ratification of the audits upon the ground of fraud. In fact, it nowhere appears throughout the proceedings that the attention of the Court was ever called to the construction of the will, or the rights of the appellee thereunder. The only matter called to the attention of the Court having the remotest bearing on this subject, was an exception to the ratification of one of the sales made after the second marriage of the widow, upon the ground that she was "a married woman and her husband was therefore a necessary party to the suit." But this, so far from invoking a construction of the will in reference to the rights of the appellee, concedes that he had no rights and that the title of the purchaser would be good if the second husband was made a party to the proceedings. It is a case therefore where the Court, through mere inadvertence or mistake, and without having its attention called to the subject, ratified the accounts assailed by the petition.

The general rule of practice that a decree or decretal order after enrolment, can be revised or annulled only by a bill of review or by an original bill for fraud, is well settled. *Thruston vs. Devecmon,* 30 *Md.,* 210; *Downes vs. Friel,* 57 *Md.,* 531; *United Lines Tel. Co. vs. Stevens, et al., ante, p.* 156. But there are certain well defined exceptions to this general rule, which are equally well established, where the procedure may be by petition. These are "in cases *not heard upon their merits,* and in which it is alleged that the decree was entered by *mistake or surprise,* or under *such circumstances* as shall *satisfy the Court,* in the exercise of a sound discretion, that the enrolment ought to be discharged and the decree set aside." *Herbert vs. Rowles,* 30 *Md.,* 278; *First National Bank of Washington vs. Eccleston,* 48 *Md.,* 155; *Pfeaff vs. Jones,* 50 *Md.,* 269; *Gechter vs. Gechter,* 51 *Md.,* 187;

*Patterson vs. Preston,* 51 *Md.,* 190 ; *Downes vs. Friel,* 57 *Md.,* 533. In our judgment this case clearly falls within these exceptions, and the result is that the order appealed from which overrules the demurrer to the petition as well as the motion to dismiss the same, must be affirmed.

*Order affirmed, and*
*cause remanded.*

(Decided 23rd June, 1887.)

STONE, J., dissented.