## MARY A. SMALL *vs.* ARTHUR CUSHING SMALL
### ET AL.

*Devise and Legacy—Time of Vesting of Remainders After a Life-Estate.*

A testator devised all his estate to trustees, with powers of sale, reinvestment and management, for the use of testator's wife during her life. After her death the trustees were directed to sell, divide and distribute the estate equally among the five named children of the testator, "or the survivors of them and the heirs of any of them who may meanwhile have died; the children of any one of them taking under this devise the parent's portion." Three of the testator's children died after him and in the lifetime of the widow. One of these, who left issue, had executed an assignment of his interest. Another died intestate and unmarried, and the third died testate and without issue. *Held*, that the children of the testator did not take vested estates upon his death but that their shares did not vest until the period fixed for distribution, namely, the death of the life-tenant, and were contingent upon their living until that period, and that consequently the shares of the two children who died without issue formed part of the estate to be divided at the death of the life-tenant, and the share of the child who had assigned his interest passes to his issue.

Appeal from a *pro forma* decree of the Circuit Court for Washington County.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*George W. Smith, Jr.*, and *Alexander Neill*, for the appellant.

The only question presented in this case is : Did the five named children take a vested or contingent remainder on the death of the testator ? Or, in other words: Does the expression, "or the survivors of them" used by the testator, refer to the time of his death or to the period of distribution?

In all such cases the intention of the testator is to be gathered from the language used by him in his will, con-

trolled by such rules of construction as have been established by the judicial wisdom of ages. What was the intention of the testator here? It is evident from every part of the will that the desire uppermost in his mind was, that his wife should enjoy the income of his estate during her life, and after her death the property should be equally divided among his children or their representatives. As to whether the interests which he gave to his children were vested or contingent, was a question that never entered his mind and formed no part of his intention. But in expressing his desire he used the technical term, " or the survivors of them," and because of the use of such term, the children of Albert Small claim that the interest did not vest until the death of the life-tenant.

The rule is well established "that the law favors the vesting of estates, and where words of futurity are employed they are not to be regarded as imparting contingency or as postponing the period of vesting, if they point merely to deferred possession or enjoyment." *Tayloe* v. *Mosher*, 29 Md. 450. That if the time fixed by the testator for payment is certain to occur, then the interest is vested. *Meyer* v. *Eisler*, 29 Md. 32; see also *Branson* v. *Hill*, 31 Md. 181; *Weed* v. *Aldrich*, 2 Hun. 531; *Stevenson* v. *Lesley*, 70 N. Y. 573; *Robert* v. *Corning*, 89 N. Y. 225.

The question in all cases has been whether the testator intended it as a condition precedent that the legatees should survive the time appointed by him for the payment of their legacies, and the answer to this question has been sought for out of the whole will and not in particular expressions only. If the day is certain it is vested. In *Leeming* v. *Sharrott*, 2 Hale, 14, there was a gift of the residue of real and personal estate to trustees to sell and divide the money with and equally among all the testator's children, so soon as the youngest child should attain 21 years, and in case of the death of any child leaving lawful issue, such issue to have the share of the parent so dying would have been entitled to, it was held that the legacy was vested and that the

share of the child who died without issue before the youngest child attained 21, the time of division, passed to his representatives. The rule has been announced many times in the broadest terms that the law favors the vesting of estates, and to make an estate contingent *it must appear*, from the language used and the nature and circumstances of the case, that the time of payment was made the substance of the gift and that the testator meant that time as the period of distribution. *Spence* v. *Robins*, 6 G. & J. 507; *Snively* v. *Beavans*, 1 Md. 208; *O'Byrne* v. *O'Byrne*, 9 Md. 512; *Fenby* v. *Johnson*, 21 Md. 106. See also *Crisp* v. *Crisp*, 61 Md. 150; *Moore* v. *Lyons*, 25 Wendell, 119; *Blanchard* v. *Blanchard*, 1 Allen, 223.

So far as the interest of Harry D. Small is involved—is this not a devise to the five named children, subject to be divested upon a condition subsequent with a limitation over on the happening of a contingency, and therefore a vested remainder in him—in which the limitation over could only have taken effect as an executory devise and as the contingency of Harry D. having children never happened—the fee in him became absolute.

The rule in Michigan is, where a testator gave a life-estate to his widow, with a provision that upon her decease the property should be divided among his surviving children, the title vested in all the children who survived their father's death and that the heirs of any child who died before the widow were entitled to the share of the ancestor. *Porter* v. *Porter*, 50 Mich. 450; *Rood* v. *Horsey*, 50 Mich. 395. Courts of Equity have established a positive rule of construction "that a bequest to a person payable or to be paid at or when he shall attain 21 years of age, or at the end of any other certain determined term confers on him a vested interest immediately on the testator's death and transmissible to his executors or administrators." *2 Williams on Executors*, 515.

It is submitted that the true construction of this will as gathered from its language and provisions will refer the

period of vesting to the death of the testator—for surely
the scheme of it was to make equality among all his chil-
dren—this equality by the other construction will be effec-
tually destroyed, because Albert in the lifetime of the
widow, in his character of executor and trustee, used of the
funds of the estate for his own purposes—he recognized the
vesting in him by making an assignment of his interest to
the administrators *c. t. a.*, to secure the repayment of the
money he had used and the appellee now asks for a con-
struction which will destroy the equality purposed by the
testator. The illustration may be carried still further and the
case imagined where all three executors and trustees could
have used the funds of the estate and upon their deaths
leaving children, such children would participate equally
with the innocent thus still more destroying the idea of
equality which runs through the entire will. Is not the key
to the construction to be found in the bequest, I give to my
daughter Mary A., in addition to her distributive share—
the piano. This language does not denote a contingency—
but an absolute vesting at the testator's death.

The clause " the distributive share of my son, Charles, to
be held and invested by my executors in trust to pay him the
annual interest thereof and upon his death without issue to
divide and distribute the same, to his brothers and sister sur-
viving, in equal parts."

If the will is to be construed to vest at testator's death
this clause is intelligible and comports with the general
scheme of the will, otherwise it establishes a different
scheme of division of this son's interest, for if the interest
is contingent in all the children, the issue of a deceased
child takes the parent share, but would not take as to this
son—because his share is especially bequeathed to his sur-
viving brothers and sister to the exclusion of the issue of a
deceased child, If this estate is contingent the two schemes
of distribution are not reconcilable. It would necessitate
one for the interest of Charles and another for the interests
of the others. We submit that such was not the intention

of the testator and therefore not a proper construction of his will. *Hopkins* v. *Hopkins*, 3 N. Y; *Chum* v. *Keith*, 4 N. Y. 126; *Mahan's Executors*, 32 Hun. 73; *Lyons* v. *Mahan*, 1 Demorest, 183; *Converse* v. *Kellog*, 7 Barb. 590; *Rose* v. *Hill*, 3 Burr. 1881; *Livingston* v. *Green* 52 N. Y. 123; *Stringer* v. *Phillips*, 1 Eq. Cas. Abr. 292; *Heathe* v. *Heathe*, 2 Atkyns, 122; *McKinstry* v. *Saunders*, 23 N. Y. 187.

*Charles Alvey* for the appellees, Arthur Cushing Small and Bertha Blair.

Two contentions are made by the defendants in this case. 1st. That they, as children of Albert Small, who died during the lifetime of the widow, and before the time of distribution, are entitled to take the share which he would have taken had he survived her, unaffected by any debts or liabilities of his, or by any assignment made by him during his life. 2nd. That the share which Harry D. Small would have taken had he survived the widow, should go into the common fund for distribution, and be distributed, along with the rest of the estate, among the surviving children of the testator and the children of Albert Small, according to the provisions of the will.

I. As to the first of these contentions, then, two questions arise: 1st. Did any interest in this estate ever vest in Albert Small ? 2nd. He dying before the time of distribution, are Arthur Cushing Small and Bertha Blair, the substituted legatees, to be affected by his assignment of any interest, which he might have had in the estate ? In other words had Albert Small, who died while the estate was vested in the trustees, and before the time at which they were directed to divide it among legatees, to be ascertained at that time, any power to defeat the share of legatees directed by the testator to be substituted for him in the event of his so dying ?

The complete and discretionary powers granted to these trustees, viz : "To take and hold," "to control and manage

in their discretion" and to "sell and reinvest the proceeds" for her maintenance vests in the trustees the legal estate and not a mere power. 3 *Jarman on Wills,* chap. XXXIV, 5th Am. Ed., p. 78. Citing 12 *Cush.* 448; 2 N. Y. 305; 7 N. Y. 564; 28 N. Y. 89; 32 N. Y. 328. *Ware* v. *Richardson,* 3 Md. 505; 1 *Perry on Trusts,* p. 305 to 320 and cases there cited. The absolute power of sale given the trustees, both during the life-estate and for the purposes of distribution at its termination, converted the whole property into personalty immediately. *Barnum* v. *Barnum,* 42 Md. 308; *Reiff* v. *Strite,* 54 Md. 298; *Carr* v. *Ireland,* 4 Md. Ch. 251; *Smithers* v. *Hooper,* 23 Md. 285.

At the time of Mrs. Small's death, therefore, the whole estate was personal assests, whose legal title was in the trustees, for the purpose of distribution as directed. 1. The Courts have always recognized the right of the testator to fix the time of vesting to suit himself, so long as he does not transcend the time allowed by the rules of law. *Trust Co.* v. *Brown,* 71 Md. 169; *Larmour* v. *Rich,* 71 Md. 383; *Bailey* v. *Love,* 67 Md. 599.

The intention of the testator to exercise this right, and postpone the vesting until the death of the widow, could not be expressed in more direct and unequivocal terms than it is in the words of the clause directing the distribution. It will be noticed that two methods of distribution are there laid down, viz:—1. (Where all the children are alive at that time). "To distribute the same—equally among my children, Albert Small, Charles A. Small, Mary A. Small, Peter B. Small and Harry D. Small." Or 2. (Where some are deceased at that time). "To divide and distribute the same —equally among—the survivors of them and the heirs of any of them who may meanwhile have died, the children of any one of them taking under this devise the parent's portion." No better instance could be found of a devise where the *time is of the substance of the gift.* The testator clearly had no such idea in contemplation as the vesting of the shares before the period of distribution, as is shown by his care in providing

persons, who could take at the time of distribution, in the event of any of the children dying during the life-estate.

As bearing out this intention attention is called to the particular words employed in this clause, and to the general context of the will, viz: 1. The express direction, "*after the death of my said wife* to divide and distribute the same, making all such sales as may be required, etc." The discretionary power of sale for the purposes of distribution, granted here, is certainly inconsistent with the idea of a vested interest in the children before the death of Mrs. Small. Clearly no division of the estate into shares, not even a nominal division, was contemplated by him before that time. 2. The words "may meanwhile have died" can clearly be referred to no other time than the death of the life-tenant. The word "meanwhile" must necessarily refer to a period between two events, and to what other can it refer than the period between the death of the testator and that of the life-tenant. This point, however, is set at rest in Maryland by the decision in *Engle* v. *the State, use of Geiger,* where the words "may have died" in a similar clause of substitution, even without the word "meanwhile," were construed as referring to the death of the life-tenant. *Engel* v. *State,* 65 Md. 539.

3rd. The words "survivors of them" are clearly referrible to the time of the death of the widow, and no other time. Suppose even that the clause of substitution had been omitted and the gift had been to "the children, Albert Small, Charles A. Small, Mary A. Small, Peter B. Small and Harry D. Small or the survivors of them." In a number of the early English cases, words of survivorship were held to refer to the death of the testator. Upon examination of these cases, however, the grounds of this decision will be found to be, either that there was no previous life-estate (in which case an indefinite survivorship would result, which would create a joint tenancy, where tenancy in common was intended,) or else that that interpretation was necessary from "some particular phraseology of the will,"

or " probable intention of the testator," or " a presumption
that the testator did not intend to cut off the children of
the legatees who might die," or the resulting of "partial
or total intestacy if the vesting were postponed." See
*Jarman on Wills*, 5th Am. Ed., chap. XLVII, 111 ; and
*Branson* v. *Hill*, 31 Md. 181, where these reasons are as-
signed.

Immediately, however, follow a long line of cases, com-
mencing with the case of *Brograve* v. *Winder*, 2 Ves. Jun.,
634, and continuing unbroken to the present day, in which
the Courts have held that limitations to persons, or their
survivors, after a life-estate, are to be referred to the period
of distribution, *i. e.*, the termination of the life-estate.   In
*Cripps* v. *Wolcott*, 4 Madd. 11, where a testatrix devised her
whole estate in trust for her husband for life, and after his
death to be divided between three children, " and the sur-
vivor or survivors of them," the Court, after referring to the
former unsettled state of the authorities, lays down the rule
as follows, as the settled rule of interpretation :   " The sur-
vivorship is to be referred to the period of division.   If
there is no previous interest given in the legacy, then the
period of division is the death of the testator, and the sur-
vivors at his death will take the whole legacy.   But if a
previous life-estate be given, then the period of division is the
death of the tenant for life, and the survivors at such death
will take the whole of the legacy."   The long list of cases,
which affirm this rule, will be found quoted in the notes
which follow the discussion of this proposition, in *Jarman
on Wills*, chap. XLVII, 5th Am. Ed. and 2 *Williams on
Executors*, 6th Am. Ed., p. 1576.   Some doubt having
arisen as to whether the rule applied to real as well as per-
sonal estate, the rule was affirmed, and declared equally
applicable to real estate in *Buckle* v. *Fawcett*, 4 Hare, 536,
a case almost identical with the present case.

Mr. Jarman, after an exhaustive review of all the cases,
deduces this rule to which he gives the full force of his au-
thority : "In this state of the recent authorities one scarcely

need hesitate to affirm that the rule which reads a gift to survivors simply, as applying to objects living at the death of the testator, is confined to those cases in which there is no other period to which survivorship can be referred ; and that, where such gift is preceded by a life or other prior interest, it takes effect in favor of those who survive the period of distribution, and of those only.''   3 *Jarman on Wills*, chap. XLVII, 5th Am. Ed., p. 588, and the cases there cited.   In *Branson* v. *Hill*, 31 Md. 188–190, the only leading case in Maryland upon this subject, the Court discussed this proposition, but declined to render a decision upon the general rule, for the reason as stated, that that case must be decided upon the peculiar language of that · will.

If this is the case in a devise to persons and their survivors simply, how much more clearly does it refer to the period of distribution, when " survivors " is read in connection with the words '' may meanwhile have died,'' just cited, and with the general context of this will.

4th. The great care manifested by the testator to provide that legatees should be in existence at the time of distribution, as shown by the clause of substitution, and by the whole context.   It is certainly clear from the above, that the time of vesting is to be at the death of the widow, *i. e.* the time of distribution, and that no interest or estate can be held to have vested in any child of Peter B. Small, who died before that time.

Even if any right or interest could have vested in Albert Small during his life, the contention of the appellant, that the assignment made by him of a part of his " share " of the estate, could in any manner affect the interest of his children, the substituted legatees, he dying before the life-tenant, is entirely defeated by the clause, substituting the '' heirs of any of them who may meanwhile have died '' in place of such deceased children.   The word " heirs " is to be read " children " here, by correlation with the next sentence, which provides that the " children " of any deceased

shall take the parent's portion.   *Albert* v. *Albert,* 68 Md. 352; *Ex parte Artz,* 9 Md. 65.

The estate is therefore to be divided, in the event of the death of one of the children of the testator during the lifetime of the widow, equally among the survivors of them and the children of any of them, who may meanwhile have died, the children of any one of them taking under this devise the parent's portion.   This could refer to no other period than the death of the life-tenant, for the beneficiaries under this devise are clearly to be determined at that time and no other.

Even where no words of survivorship have been used the Courts have uniformly held, in construing devises of this kind, where children are substituted for parents who may die before the period of distribution, that whatever interest the parents might have had in the estate was entirely divested by their death, and that the children were substituted legatees, claiming under the original devise, in their own right, and not to be effected by the liabilities or assignments of the parent.   *Hervey* v. *McLaughlin,* 1 Price, 264 *Galland* v. *Leonard,* 1 Swanst, 171; *Le Jeune* v. *Le Jeune,* 2 Keene, 701; and the discussion of this proposition in *Jarman on Wills,* chap. XLIX ; 2 *Williams on Executors,* 6th Am. Ed. 1365, note.

These decisions have been repeatedly affirmed in this country.   *Colby* v. *Duncan,* 139 Mass. 398; *Olney* v. *Hull,* 21 Pick, 311; *Teed* v. *Morton,* 60 N. Y. 502; *Carmichael* v. *Carmichael,* 4 Keyes (N. Y.) 346 ; *Beach on Wills,* 180, with cases there cited.

In *Engel* v. *State, use of Geiger,* 65 Md. 544, a case almost identical with the present case, and one which may be regarded as the leading case on this subject in Maryland, the Court decided that the substituted legatees in a similar devise took unaffected by the liabilities of their parents.   In *Straus* v. *Rost,* 67 Md. 465, the assignment of the parent was held not effective as against the substituted legatees.   The same proposition has also been fully affirmed

in a number of other cases closely analagous to the present case. *Engel* v. *State*, 65 Md. 544 ; *Straus* v. *Rost*, 67 Md. 465 ; *Bailey* v. *Love*, 67 Md. 595 ; *Trust Co.* v. *Brown*, 71 Md. 168 ; *Larmour* v. *Rich*, 71 Md. 371 ; *Cox* v. *Handy*, 78 Md. 108 ; *Reiff* v. *Strite*, 54 Md. 298.

The rule established by the long line of authorities above cited, and so emphatically affirmed by the Courts of this State, certainly establishes the contention of these appellees ; that there never was in Albert Small, at any time during his life, he dying before his mother, the life-tenant, any interest or estate in the estate of his father, which could have passed to his assignees by his deed of assignment, in such a manner as to survive him, and operate to defeat the estate of the legatees, who are directed to be substituted for him, in the event of his so dying. The contingent expectancy of Albert Small in the estate, passed to his assignees, who stood, as to so much of the estate, exactly in his place, up to the time of his death, and with their expectancy of an interest in the estate subject to the same contingency. At his death this expectant interest was entirely defeated, and passed to the substituted legatees. They take in their own right as legatees of their grandfather, and are certainly not to be affected by an assignment, made by their father, of an estate which was never his, and which has now vested in them upon the death of the life-tenant.

II. As to the second contention of the appellees, that the share of this estate which Harry D. Small would have received had he survived his mother, should go into the common fund for distribution ; the appellants contend that this share should pass, by the will of Harry D. Small, to his sister, Miss Mary Small. It is apparent from the language of the will and from the authorities above quoted, that no interest in the estate ever vested in Harry D. Small. His contingent, expectant right to a distribution from the estate was entirely defeated and terminated by his death in the lifetime of the widow, and devolved upon those who

are directed to be substituted for him, in the event of his dying, and who are to be determined at the time of his distribution, viz., " the survivors of them and the heirs of any of them who may meanwhile have died." The substituted legatees here are the survivors and the heirs of those who have died, just as in Albert Small's case they are his children, who are to " take the parent's portion." It has already been shown that the word " heirs " is to be read " children," by correlation with the succeeding clause, which says that the " children " of any deceased child shall take the parent's portion. This is the doctrine of the Court in *Albert* v. *Albert,* 68 Md. 365. By no possible construction could this word " heirs " be made to apply to the legatee under a will of one of these deceased children. The testator has very clearly indicated the course in which he intends this estate to go. The objects of his bounty are to be his children, if all survive their mother, if not, then the survivors and the children of those who have died, *per stirpes.* How can it be claimed that Harry D. Small could have the right to bequeath a share of the estate, which he never possessed, to some other, and to divert it from the course so prescribed by the testator. Could it be claimed that this share could have been bequeathed by him to another legatee outside of the family of Peter B. Small ? The legal right would have been the same. Or how can it be claimed that he had the right to single out one of his father's family, and make her, by his own act, the recipient of a greater share of the estate than is given to her by her father's will. To so hold would certainly defeat the intention of the testator in a most marked and unprecedented manner. It would be equivalent to holding that any legatee under a will, whose interest was expectant upon a prior life-estate, could by his own act alter the terms of the testator's will to suit his own pleasure. There is no gift of the corpus of this estate prior to the time of distribution. There is a gift of the income and proceeds to Mrs. Small during her life, and at her death (the time of distri-

bution) a gift of the corpus of the estate to legatees, then to be determined. The rule is well settled that in such a case the share which a deceased child would have received, had he survived, will not pass to his personal representatives. 2 *Williams on Executors,* 1343, with reference to *Billingsley* v. *Wills,* 3 Atk. 219. How then could it be bequeathed by will before that time. This principle is well illustrated in the case of *Cox* v. *Handy,* 78 Md. 121.

FOWLER, J., delivered the opinion of the Court.

This appeal brings before us for construction the will of the late Peter B. Small of Washington County in this State.

The particular paragraph on which the present controversy hinges is as follows : " I hereby give, devise and bequeath to my sons, Albert Small, Peter B. Small and Harry D. Small * * * all and every, my estates and property, personal and mixed, &c., * * * in trust to take and hold the same, and to control and manage in their discretion all and every part thereof and to sell and dispose of the same and to reinvest the proceeds thereof for the sole use and maintenance, after the payment of my debts, of my wife, Sarah B. Small, for and during her life * * * * and after the death of my said wife, to divide and distribute the same * * * equally among my children, Albert Small, Charles A. Small, Mary A. Small, Peter B. Small and Harry D. Small, or the survivors of them, and the heirs of any of them *who may meanwhile have died,* the children of any one of them taking under this devise the parent's portion." * * * * * The testator left surviving him a widow, Sarah B. Small, and five children named in his will. The widow died in March 1899, and three of the children, Albert, Charles A, and Harry D. all predeceased her. She left surviving her only two children, namely, Mary A. and Peter B. Albert Small died intestate leaving surviving him two children. Charles Small died intestate and unmarried and Harry D. Small

died unmarried but testate.   All the facts necessary to
raise the question presented by this appeal have been
either admitted or are contained in the agreed statement of
facts, but it will not be necessary further to rehearse them,
except to say that Albert Small conveyed and released to
his co-trustees, all his interest in his and their father's es-
tate to secure the payment of a large indebtedness to that
estate, for the benefit of the heirs at law and devisees of
his father other than himself, and that Harry D. Small by
his will devised and bequeathed all his estate to his sister,
Mary A. Small.   The bill was filed by the administrators
*cum testamento annexo* of Peter B. Small, Sr., the testator.
Their contention is that the assignment of Albert as well as
the will of Harry D. is effective to convey their respective
interests in their father's estate under his will, upon the
theory that the respective shares devised and bequeathed
by their father's will vested upon the death of the testator,
while the contention of the defendants who are the children
of Albert Small is that under a proper construction of the
will the respective shares of Albert and Harry never vested
in them for the reason that they both died before the death
of their mother the life-tenant.   The question, therefore,
and the only one we have to consider, is, when did the es-
tate or interest devised and bequeathed by the will of Peter
B. Small vest in his children ?   If such interest vested upon
his death, then Albert had such a vested estate as passed
under his deed, and Harry had such a vested estate as
passed by his will to his sister Mary B. Small, and the re-
sult would be that the estate of the testator, Peter B. Small,
Sr., now in the hands of the plaintiffs, would be divided be-
tween the two surviving children Mary A. and Peter B.
Small, Jr., and the children of Albert Small—the latter,
however, taking the share of their father, subject to their
father's liabilities, and Mary A. taking Harry D.'s share
under his will in addition to her own share as a child of
the testator.   But if the other view be correct, namely, that
by the true construction of the will the estate devised to

the children was contingent upon their surviving to the period of distribution, that is to say, the death of the life-tenant, the same parties would share in the distribution of the estate in equal proportions.   The one-fifth shares which would have gone respectively to Charles and Harry if they had survived the life-tenant, or to their respective children if they had left any surviving her, go into and form part of the estate or common fund to be divided, and the children of Albert take his share free from his liabilities.   The Court below passed a *pro forma* decree adopting the latter construction and thereby held that the devises and bequests to the five children of the testator were contingent upon their surviving the death of the life-tenant, which is made the period of distribution.   We have thus fully stated the contentions of the respective parties and the facts upon which they depend, and we will proceed to consider the law applicable to them.

But before discussing the question involved, in the light of adjudicated cases, which, of course, when compared to the language of the testator used in his will are of only secondary importance in discovering his true intention, let us examine the provisions of the will itself.   As we have already seen, the testator devised to trustees the whole of his residuary estate " to take and hold," " to control and manage in their discretion," and " to sell and reinvest the proceeds thereof for the sole use and maintenance of" his wife during her life.   So long, therefore, as she should live his whole estate was to remain in the hands of the trustees for the sole purpose of maintaining her, and in order the better to promote that object he gave to his trustees such powers as necessarily vested in them the legal estate until the period of distribution should arrive and have been completed.   *Long* v. *Long*, 62 Md. 65, and cases there cited; 2 *Jarman on Wills*, p 1138, 1155; *Ware* v. *Richardson*, 3 Md. 505.   Having thus provided for his wife during her life, he declares that his estate upon her death shall be divided and distributed equally among his

children, naming them, and the heirs of any of them who may meanwhile have died, the children of any one of them taking the parent's portion.  He thus provides for two methods of distribution, one to be applicable to the contingency of all his children living to the time of distribution, and the other which is applicable to the contingency which really happened, that is to say, the death of some of his children before the period of distribution.   It is with the method applicable to the latter contingency alone that we are interested.   How was it, therefore, according to the testator's directions to be made ?  He says to his trustees :   " You are to divide and distribute my estate equally among those of my children who survive my wife and the heirs of any of them who may meanwhile have died, the children of any one of *them* taking   *  *  *   the parent's portion."   It seems to us that the plain meaning and intention of the testator to be drawn from his language is that his surviving children, and the children of his deceased children, shall share equally in the distribution of his estate — the only condition being that the grandchildren, if any, should take *per stirpes* and not *per capita*— or, in other words, as contended by the defendants, the children of Albert Small, the children of deceased children stand in the place of and are to be taken as substituted for their respective parents.   The only safe and practicable method to effect this, as we have said, plain intention, is to postpone the period of vesting to the time of distribution, and to hold that the estates vest in the original and substituted legatees at the same time.   Otherwise, as illustrated in this case, some of the substituted legatees, so far from getting, as the testator declares they shall get " the parent's portion " they would get a small part of it, and if the liabilities of the parent had been equal to his portion, they would take nothing.   This result certainly could not have been contemplated by the testator—otherwise he would not have been so careful to designate the persons who were to take in the event of the death of any of his children—for if

the estate vested in his children upon his death, they could have sold and conveyed it or disposed of it by will, and if they had done neither, their respective shares would have gone, as provided by the laws of descent or distribution, and such a provision as we find in the will before us would have been altogether unnecessary and inapplicable. But, again, the testator expressly directs his trustees *after the death of his wife* "to divide and distribute" his estate "making all such sales as may be required." That is to say in addition to the power of sale, &c., given to the trustees to be exercised during the life of his wife, power is also given them to make all such sales after the death of his wife, as may be required to effect the distribution provided by his will. Such power, it seems to us, is clearly inconsistent with the construction giving the children a vested interest before the death of the life-tenant, their mother. As we have said the powers of management, sale and investment clearly given to the trustees to exercise during the life of the wife show, beyond question, that the legal title was, during that period, in them in order that they might effectually perform the duties imposed on them by the testator, and we think it equally clear that it continued so vested in them for the purpose required by the distribution. But it is evident if there was an equitable or beneficial interest vested in the children under the will, the estate might have been disposed of long before the period of distribution, and the power of sale given would have been nugatory. It appears also to us that the words "may meanwhile have died" necessarily refer and can only refer to the time which elapsed between the death of the testator and the death of his wife. The most cursory reading of the will makes this apparent. And to the same point of time is to be referred the words "survivors of them," for it is evident from the whole context that the survivors who are to participate in the distribution are and can only be those who survive the life-tenant, because it is only then, that is, after her death, that the distribution can be made.

In order, therefore, to obey the express wish of the testator " after the death " of his wife to divide and distribute his estate between his children " and the survivors of them"—. the latter words must mean those who survive his wife.

We think, however, that the conclusion we have reached by an examination of the will itself is also fully justified by the principles which have been adopted by this Court in a number of adjudicated cases.    In the case of *Engel et al.* v. *State, &c.,* 65 Md. 544, where as here the question was to: what period do the words " may have died " refer ; " As a general rule "said ALVEY, former Chief Judge of this Court, "it is certainly true that in the case of an *immediate* gift, with a bequest over in the event of the death of the first or pre- ceding legatee, the event of death is referable to the life-. time of the testator.    But it is explicitly laid down as text- law that this construction is only made *ex necessitate rei,* from the absence of any other period to which the words denoting the event of death can be referred."    But as was held in that case, if there is a bequest to take effect in pos- session after a life-estate, as in the case before us, the words may be considered as extending to the event of the lega- tee dying in the interval between the testator's death and the period of distribution.    Again quoting from the lan- guage of CHIEF JUDGE ALVEY, which is strikingly apposite. to the present case :  " It is unmistakably clear that the tes- tator intended to substitute the child or children of the leg- atee who might die, in the place of the parent ; and we are of the opinion that the words in question (" may have died ") do confine the happening of the death of the legatee to the life-time of the testator ; and as the daughter survived her. father, but died in the life-time of the widow    *    *    * before distribution made, her child became substituted lega- tee under the will."    In *Straus* v. *Rost,* 67 Md. 465, the same rule was again adopted and enforced as applicable to a provision like this, the Court saying, MILLER, J., deliver- ing the opinion of the Court.   " The case is clearly covered by the reasoning and decision in *Engel* v. *State,* which was

decided after full consideration and by a very full Court." And finally in *Larmour* v. *Rich*, 71 Md. 369, this rule is applied, explained and enforced by the present Chief Justice, and the distinction is clearly drawn between that class of cases where the estate or interest vests at the death of the testator, because of an absence of any expressed intention that it vest later, and those where the testator by his will fixes a more distant period for the vesting. Among the class of cases first mentioned are cited *Meyer* v. *Eisler*, 29 Md. 28; *Tayloe* v. *Mosher*, 29 Md..451 and *Crisp, Trustee,* v. *Crisp*, 61 Md. 149, all of which were relied on by the plaintiffs. And among the latter class are cited *Engel* v. *State, use of Geiger*, 65 Md. 544, and some other cases relied on by the defendants to support their contention.

We conclude, therefore, that it is clear both from the face of the will, as well as from the authority of adjudicated cases in this State, that the legacies to the children of the testator did not vest until the death of the life-tenant, the period of distribution, and that, therefore, the children of Albert Small took his share free from any of his liabilities.

And for the reasons given, and upon the authorities already cited, it must also follow that if Harry D. Small had no vested interest in the legacy, because he died during the life of the life-tenant, it also follows that Mary A. Small takes no part of it under his will, and it forms a part of the fund to be distributed.

The *pro forma* decree which divides the estate of P. B. Small equally between his surviving children and the children of Albert Small—the latter taking the share of their father—must be affirmed.

> *Decree affirmed. Costs above and*
> *below to be paid out of the estate*
> *of P. B. Small.*

(Decided January 11th 1900).