## JOHN J. G. HOOVER ET AL. *vs.* CARRIE SMITH ET AL.

*Construction of a Will—Vesting of Remainders After a Life Estate.*

A testator gave all of his property to his wife to hold during her life or widowhood, then "the property to be sold and divided equally among my lawful heirs. The children of deceased heirs shall inherit the full portion as their parents if living." The testator left surviving him a widow, children and grandchildren. One grandchild, Elizabeth, was the only child of a deceased daughter of the testator. Elizabeth died after the testator, but in the lifetime of the widow, and the question in this case was whether she had such an interest in the estate of the testator as would pass to her next of kin, she having died unmarried, upon the termination of the life estate. *Held*, that the remainders to the testator's heirs vested in them at the time of his death and the vesting was not postponed till the death of the life tenant, but only the enjoyment; that those who answered the description of testator's heirs at the time of his death are entitled to both the real and personal property, and that consequently Elizabeth took her share of the estate by direct gift, and the same passes to her personal representatives.

Appeal from a decree of the Circuit Court for Frederick County (MOTTER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Emory L. Coblentz* and *John S. Newman* (with whom was *Chas. C. Waters* on the brief), for the appellants.

*S. A. Lewis*, for the appellees, submitted the cause on his brief.

BOYD, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Frederick County construing the will of Gideon Hoover. The portion of the will involved in this controversy is as follows :

" Item 1st. I devise and bequeath to my beloved wife, Elizabeth, all my property, real, personal and mixed, to have and to hold the same during her natural life, or as long as she shall continue to be my widow.

" After either of the above events the property to be sold and divided equally among my lawful heirs.

" The children of deceased heirs shall inherit the full portion as their parents would have done if living."

The testator died September 6th, 1874, the day after his will was executed, leaving surviving him a widow, two sons, a daughter, two grandchildren, who were the children of a deceased daughter, Eliza Stottlemyer, and a granddaughter who was the child of another deceased daughter, Olive Wolf. Elizabeth Wolf the daughter of Olive, died December 7th, 1890, and Elizabeth Hoover the widow of Gideon died in October, 1901, without having remarried. Annie M. Maugans, one of the daughters of the testator, and her husband, made a deed for their interests in the " Gideon Hoover farm," which the bill prays may be construed, but it was stated at the argument that that was no longer necessary and the only question for us to determine is whether Elizabeth Wolf had such interest in the estate of her grandfather as to pass at her death to her representatives. She never married and Jacob Wolf, her father, claims the interest in the estate which it is admitted she would have been entitled to if she had lived until the period of the distribution of her grandfather's estate.

The law favors the early vesting of estates and "Courts

will, in the absence of plain expressions, or an intent plainly inferrible from the terms of the will, adopt the earliest time for the vesting where there is more than one period mentioned." *Straus* v. *Rost*, 67 Md. 476. It is a well recognized rule of construction that in doubtful cases the interest shall be deemed to be vested in the first instance, rather than contingent, unless the instrument under consideration does not admit of such construction. When a testator has employed terms in his will which in their ordinary signification are in accord with such familiar and fixed rules of law, it should require very clear expressions elsewhere in the will to justify the Court in giving such terms some other and unusual meaning. When, therefore, a testator directs that after his wife's death or marriage his property is to be sold and divided equally among his "lawful heirs" and makes no other disposition of the remainder after his wife's death or marriage, when and in whom does such remainder vest? At common law an heir is "he who is born or begotten in lawful wedlock and upon whom the law casts the estate in lands, tenements or hereditaments *immediately upon the death of his ancestor.*" In 15 *Ency. of Law*, (2 ed.) 322, it is said: "A devise to heirs, whether to one's own heirs or to the heirs of a third person, designates not only the persons who are to take, but the manner and proportion in which they are to take. Where there are no words to control the presumption, the law presumes the intention to be that they take as heirs would take by the rules of descent," and again it is there said "It is well settled that a gift to the heirs of one will be construed as referring to those who are such at the time of the ancestor's death." If then we adopt the ordinary meaning of the term used by the testator (lawful heirs), we find that he presumably intended that those who would be entitled to his real estate *at the time of his death* should get the benefit of the proceeds of the sale. It cannot be successfully contended that merely because he gave his wife an estate for life, or as long as she continued to be his widow, the vesting of the estate given the heirs should be postponed until the widow's interest ceased. If he had

said "After either of the above events the property to be sold
and divided equally among those who are entitled to it by the
rules of descent at the time of my death," there could be no
question about it.   And when he used a term which has that
meaning, in the absence of some intention expressed to the
contrary, must it not be given to it ?   It is true that this will
speaks of real and personal property and the record does not
show how much there was of either, but the word "heirs" has
been held to include "next of kin," when used in such con-
nection as it could be seen such was the intention, and as this
testator left three children and three grandchildren, who were
children of his deceased daughters, if he had died intestate,
the same persons who would have inherited his real estate
would have been entitled to distribution of his personal prop-
erty.   Those who were his heirs were also his next of kin,
and we are now considering the class of persons who were to
receive his property.   His children and grandchildren were
not named in the will, but instead of naming them he de-
scribed them by the term we have mentioned.   So reading
the will thus far, we find that the testator left his property to
his wife for life, or as long as she remained unmarried, and
after her death or marriage, to a class of persons whom he
designated by the term which the law says means those upon
whom the law casts his real estate immediately upon his death,
and as he made no other provision for his personal property
it may be assumed that he meant to include that.   Under the
rules of construction we have already referred to, the pre-
sumption therefore is that he intended that the interest in his
property should vest in them at the time of his death, unless,
there be something else in the will to show the contrary.   We
have quoted above all that it says on the subject, and hence
unless the last clause changes the meaning of the others
there would seem to be no ground to question the vesting of
the estate at the death of the testator.   That says "The chil-
dren of deceased heirs shall *inherit* the full portion as their
parents would have done if living."   When the will was made
two of the testator's daughters were dead, one having left two

children and the other one child. It is manifest that he had those grandchildren in mind and primarily that provision was made for them. It is true that no one can, strictly speaking, be said to be an heir of his ancestor while he is living, but it is evident that the testator spoke of those as such who would have been "heirs" if living. If the theory of the appellants be correct, the child of one of the testator's children who died after the testator and before the widow could not have taken as he would not have been a child of a "deceased heir." There would be nothing for the child of the deceased child of the testator to *inherit* unless the estate had vested in the latter. We think there is nothing in this clause of the will from which it can be fairly inferred that the testator intended to postpone the vesting of the estate until the widow's interest in the property ceased by death or marriage, but he only intended by the provisions in his will to postpone the time of their enjoyment of the interests they were to receive.

It is always difficult in construing wills to find cases exactly in point, but that of *Cox* v. *Handy*, 78 Md. 108, is in several respects as applicable to this one as we are apt to find. There the testator left certain *real and personal* property to his wife for life and his will contained this clause : " It is my will that *after the death of my wife*, Mary Ann Handy, all the property devised to her for life    *    *    *    *    *    *shall be sold*, if necessary for equal partition, or if the same can be accomplished without a sale, shall be divided amongst my children, share and share alike, *the child or children of any deceased child to take the portion to which the parent· if living would have been entitled.*" This Court held that a share of the property vested in each of the children of the testator who survived him, and if any such child died before the life tenant, leaving children, that his share was divested in favor of such children, but that the share of a child dying without children was not divested, but went to his personal representatives. Or, as was said in the opinion delivered after a motion for reargument, " A share of the property vested in each of the children who were living at the time of his death, and if any child died before the period

of distribution leaving children, they were *substituted* in his place ; his share, however, was not divested if he left no children, but it went to his representatives.'' In reference to the share of Julia J. Handy whose father died before the will was made, it was held that it was clearly the testator's intention that she should take a child's part, and that opinion concluded by saying '' If the deceased parent survived the testator, the child took by substitution in his place, but if he died in the lifetime of the testator, the child's title was by direct and original gift.'' So applying the rules thus announced to this case (and the clauses in the two wills as to what a child of a deceased child shall take are very similar), we are of the opinion that the child of Mrs. Wolf took by direct and original gift the interest her mother would have been entitled to, if she had survived the testator, and Elizabeth Wolf's interest went to her representative.

The appellants have cited *Straus* v. *Rost,* 67 Md. 465; *Larmour* v. *Rich,* 71 Md. 369; *Small* v. *Small,* 90 Md. 550, and other cases, but they can readily be distinguished from the one we have before us. It is sufficient to say that in those cases the Court reached the conclusion from the wills under consideration that the testators had with reasonable certainty indicated the time at which they intended the estates in controversy to vest and the Court was governed by such intention. In *Small* v. *Small, supra,* it was said '' the distinction is clearly drawn between that class of cases where the estate or interests vests at the death of the testator, because of an absence of any expressed intention that it vest later, and those where the testator by his will fixes a more distant period for the vesting,'' and a number of cases are cited to illustrate the respective classes.

As no question has been raised as to whether there ought to be administration on the estate of Elizabeth Wolf, and as the bill made Jacob Wolf, her father, a party, we need not determine that question, and will affirm the decree which decreed that Elizabeth Wolf took a one-fifth vested interest in the estate of Gideon Hoover, which survived her death, and that

her representative is entitled to share in the distribution of said estate to that extent.

> *Decree affirmed, the costs to be paid out*
> *of the estate of Gideon Hoover.*

(Decided January 22nd, 1903.)