MARGARET L. ROBERTS *vs.* JOHN M. ROBERTS ET AL., TRUSTEES—MARGARET A. LANDON AND CLYMER WHYTE, ADMR., &c., *vs.* CHILDREN OF A. SHRIVER.

*Vesting of Remainders—Death of Remainderman Before Termination of Life Estate—Devise and Conveyance of Vested Remainder—Power of Disposition Annexed to Life Estate with Remainders Over--Remainders Under a Will Held Not to be Contingent—Vested Remainder Defeasible in Part—Description in a Deed Held to Include a Vested Remainder.*

When there is a vested remainder in property after a life estate, such interest is not defeated by the death of the remainderman before the termination of the life estate, but it passes to the heirs-at-law and next of kin of the remainderman in case of his intestacy, or to his devisee or legatee in case he disposes of the same by will.

When an estate is given to one for life with a remainder over to other persons, and a power of disposition of the property is annexed to the life estate, the remainder is not affected by the power unless, and to the extent, that it be exercised.

In such case the remainder vests subject to the execution of the power and the uncertainty as to whether the power will be exercised as to all or any part of the estate does not make it a contingent remainder.

The residue of an estate was given by will to the testator's wife, for her life, in trust for the benefit of herself and of her and the testator's children, with the power to her to lease and sell and re-invest the proceeds, and to use so much of the principal as may be required for the support and education of the children. Then the testator provided, "I devise and bequeath all my estate, remaining at the death of my wife, to my children by my said wife, share and share alike absolutely, the children of any deceased child shall stand in their parent's place and receive the share that parent would have been entitled to if living." During the lifetime of the testator's widow one of the daughters died leaving a husband and two children and afterwards these children died leaving their father as the heir-at-law and next of kin of the last decedent. *Held*, that the power given to the widow to sell and re-invest the property and to use the principal for the support of the children does not operate to make the remainders to them contingent, nor is that construction to be had because the testator made no provision as to the share of a deceased child who might die in the lifetime of the widow without leaving issue; that the remainders over vested in the children

upon the testator's death and their right to participate in the distribution of the estate was not contingent upon their surviving the testator's wife.

*Held*, further, that the share of the child of the testator who died in the lifetime of the widow vested in her children, and on their deaths, also living the widow, their shares passed to their respective next of kin and heirs-at-law.

A vested remainder in land may be devised, mortgaged or conveyed.

A deed conveying all and singular the real and personal estate wheresoever situated and all the property of every kind of the grantor is sufficient to convey a vested remainder in certain real estate given to the grantor under a will. Such description is not invalidated by Code, Art. 21, sec. 9, which provides that a deed containing a description of the real estate conveyed sufficient to identify same with reasonable certainty shall be sufficient, if the deed be properly executed.

A woman who was entitled to a vested remainder in certain property after the termination of an existing life estate therein, united with her husband in a deed of trust for the benefit of the creditors of both of them, by which they conveyed "all and singular the real and personal estate wheresoever situated and all other property of every kind wheresoever situate" of the grantors. *Held*, that this deed not only conveyed all the property owned by the grantors jointly, but all that they owned individually, and included the vested remainder owned by the married woman.

Appeals from the Circuit Court for Carroll County (THOMAS, J.)

The cause was argued before McSHERRY, C. J., BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Frank Gosnell* and *George Weems Williams*, for Margaret A. Landon and Clymer Whyte, appellants.

The simplest illustration of a vested remainder is: Testator leaves his estate to A for life, and upon A's death to B absolutely. In what respect does the testamentary disposition under consideration differ from the devise mentioned in the illustration? There is no real difference.

(*a*) Instead of giving his wife a legal estate for life, as was given A in the illustration, Mr. Shriver left his property to his wife for life, *in trust, for the use and benefit of herself and their*

*children.* That is to say, the widow and testator's children by her, took equally and as tenants in common, equitable estates during the life of the widow.

(*b*) In the illustration, A, the life tenant has no power to dispose of the *corpus*, while in the case at bar Mrs. Shriver had the power conferred on her to dispose of the principal and to apply the proceeds thereof to the support of herself and their children, or for the education or advancement of the latter.

(*c*) B, in the illustration, acquires an estate in possession upon A's death, and no provision is made as to what shall become of the estate in the event of B's death; while in the will under discussion the testator devises and bequeaths "all my estate, real and personal, remaining at the death of my said wife to my children by my said wife, share and share alike, absolutely and in fee-simple, the child or children of a deceased child to stand in its or their parent's place and stead, and to receive and have the share and interest its and their parent would have been entitled to if living."

We will now discuss these points of supposed difference and see if any or all of them are of such a character, taking of course the language of the whole will into consideration as to make the remainders contingent and not vested.

(*a*) It is apparent from the will that the testator desired to make provision for the support of his wife and their children during her life, and in order to make this more effective, he makes her trustee. The fact that the remaindermen's estate follows a life estate split up into legal and equitable estates, cannot and does not make the remainder a contingent one, for that fact does not of itself produce or create a contingency.

In *Buck* v. *Lantz*, 49 Md. 445, and in *Tayloe* v. *Mosher*, 29 Md. 451–452, it was held that it makes no difference *as to the vesting* of the estate whether the legal estate be devised or conveyed to trustees who are required to convey, according to the direction of the will or instrument creating the estates, or whether the interest is provided to take effect without the intervention of trustees. Now, if this is so, it would neces-

sarily follow that the vesting of the legal estate of the life tenant in a trustee cannot effect the vesting of the remaindermen's estate.

Neither does the fact that the remaindermen, or certain of them (they being also life tenants), have the right to be educated or advanced in addition to being supported, have that effect. The right to support, education or advancement, though in addition to their rights as remaindermen, cannot change the character of their estate as such.. It certainly cannot be said that the mere fact that the remaindermen, or certain of them, also have an interest in the life estate evidences an intention on the testator's part that the estates in remainder, shall not vest on his death. It is clear that if the persons entitled to support, education and advancement were not the remaindermen, no one could argue that because the testator directed that certain persons should be supported, educated or advanced during the life estate, that that direction would affect the character of the estates in remainder. It is clear to us that the same would be true although the persons entitled to support, education and advancement are the same persons as the remaindermen.

(*b*) The next point to be discussed is, whether the power lodged in the widow as trustee to lease or to sell and convey in fee-simple the testator's real estate, the proceeds thereof if sold, to be invested under the trusts of the will, and to use so much of the principal of the estate as may be required for the support of herself and their children, all in the discretion of the trustee, affects the character of the estate in remainder.

It is to be noted that the testator gave his wife two distinct and separate powers: one to sell and convey, in fee-simple, the real estate, or any part thereof, the proceeds of such sale or sales to be invested under the trusts of the will, and also to lease the real estate; and the other to use the principal for certain definite purposes. It is clear both from the terms of the will and from the authorities, that the powers conferred on Mrs. Shriver did not give her full and complete powers of distribution over the property. *Russell* v. *Werntz*, 88 Md. 210; *In re Bauernschmidt's Estate*, 97 Md. 35.

The powers above enumerated are not inconsistent with the contention that the remainders are vested. The existence of the power in a life tenant to convert the realty into cash and to reinvest the same, or to use the principal so that the *corpus* of the estate is diminished, does not either make what would otherwise be a vested remainder a contingent one, or show an intent on the part of the testator that the estates should not vest in the remaindermen until the death of the life tenant. *A fortiori* when the power to do these things is not in the life tenant, but in a trustee. *Waters* v. *Waters*, 24 Md. 430.

Applying the reasoning of the case cited to the case at bar, it necessarily follows that the remaindermen here take a vested estate notwithstanding the fact that in the proper exercise of the powers conferred on her, the testator's widow as trustee might have found it necessary to convert the realty into personalty, or use nearly the whole of the principal of the estate for the purposes mentioned in the will. Such a disposition would undoubtedly affect the *quantity* of the estate *but not the quality thereof*. *Am. & Eng. Ency.*, vol. 24, p. 389; *Ducker* v. *Burnham*, 146 Ill. 10, 20; *Railsback* v. *Lovejoy*, 116 Ill. 442; *Mitchell* v. *Knapp*, 54 Hun. 500; *Heilman* v. *Heilman*, 129 Ind. 59, 65; *Woodman* v. *Woodman*, 89 Me. 128, 136, 137; *Burleigh* v. *Clough*, 52 N. H. 267.

When we read the numerous cases here and elsewhere, defining remainders to be vested, notwithstanding the fact that they are to be divested *pro tanto* to let in children that may be born after the death of the testator and during the lifetime of the tenant, which, of course, diminishes the amount each remainderman would have otherwise received, it is apparent that the quantity of a remainderman's estate may be diminished under the terms of the instrument creating it without changing or affecting the quality of his estate. *Dulany* v. *Middleton*, 72 Md. 67, 75; *Tayloe* v. *Mosher*, 29 Md. 443, 455; *Am. & Eng. Ency.*, vol. 24, p. 383. It is to be observed that in *Dulany* v. *Middleton*, *supra*, the trustees named in the will of Lambert Gittings, which was the subject of construction in

·that case, had the power to sell any part of the real 'or personal estate to pay debts or legacies, or to effect division among the devisees and legatees according to the directions of the will, or to make or change investments, whether real or personal property, in their discretion, and yet the Court decided that the *cestui que trust* took vested interests in the estate.

So, too, in *Tayloe* v. *Mosher, supra*, at pp. 443, 450, in which the remainders were held to be vested, the trustees had the power to make any sale, disposition, or deed of the estate and property that might be requisite and proper for the final distribution, and otherwise carrying into full effect the provisions of the will. As was said in the case last cited (p. 455): "*The fact that an estate is liable to be divested in whole · or in part upon a contingency, does not make it a contingent estate.*" The proposion contained in this quotation settles the contentions of the appellee on this point. It is contended on their behalf ·that because Mrs. Shriver, the widow, as trustee, had the powers to sell or lease the real estate and to use the principal for the support and advancement of their children, the testator's children or grandchildren took contingent remainders, for it might happen that the life tenant would, in the exercise of her powers, use up the principal for the purposes mentioned, and there would be nothing left for the remainders to act upon, and, therefore, the remainders were contingent upon Mrs. Shriver's not exercising her powers. We submit, however, ·that these estates vested in the remaindermen, but were liable ·to be reduced in quantity upon a contingency, to wit, the ·proper exercise by the widow as trustee of the powers conferred upon her by the will.

The learned Court below was of the opinion that the testator intended that the remainders should be contingent and not vested, and that this intention is apparent from two considerations: First, because the property devised and bequeathed to ·the remaindermen is what remained of the testator's property at the death of the life tenant; and, second, because the testator directed that his children should "share and share alike, absolutely and in fee-simple, the child or children of a de-

ceased child to stand in its or their parent's place and stead, and to receive and have the share and interest its and their parent would have been entitled to if living,'' and that the equality of distribution thus indicated would, or could, be disturbed by the exercise of the powers by the trustee.

The first consideration above mentioned is practically included in the point already discussed, and that is, that the fact that the testator contemplated that his estate might be changed or diminished during the life estate, is not significant or in any way decisive in determining the character of the remainder. The other consideration, we submit, should not be given the importance attached to it by the learned Judge who decided this case below. It is true that the testator desired that his estate should be shared equally by his children ; but it is also apparent that he was apprehensive lest the income should be insufficient to support the widow and support and educate their children, and to advance the latter in life, and, therefore, conferred on his widow as trustee certain powers relating to the disposition of the estate for certain purposes. The equality of distribution was subject to and liable to be disturbed by the exercise of the powers by the trustee. And this is so no matter whether the remainders are regarded as contingent or vested. Accordingly, even if the remainders are considered as contingent, the actual equality of distribution cannot be preserved so long as the powers relating to the disposition of the principal may be exercised, for these powers, if exercised, are inconsistent with equality of distribution. But it may be urged that if the remainders are held to be contingent, that then the equality of distribution is preserved for the reason that the remaindermen would be equally entitled to share in the property remaining at the time of the death of the life tenant, and that thereafter the powers of the trustee would be terminated. In other words, this contention is based upon the assumed intention of the testator that what he desired was equality of distribution in the estate after the powers vested in the trustee had ceased to exist by reason of her death. We contend that what the testator intended was equality of distri-

bution in the estate from the death of the testator, subject to
the disposition by the trustee of the *corpus* of the estate in the
pursuance of the powers conferred on her.   The practical re-
sult is the same under either contention, as the share each
remainderman would actually get would be the same, and
what possible object would the testator have in desiring equality
of distribution after the death of the life tenant rather than
equality of distribution from the date of his death, subject to
be disturbed by the exercise of the powers by the trustee?   It
must be borne in mind that the law favors the vesting of estates,
and that, accordingly, estates will not be held to be contingent
unless the testator has clearly indicated an intention to post-
pone the time of the vesting of the remainders.   Certainly in
this case the fact that the testator by declaring for equality of
distribution, which could not be actually given effect to if the
trustee saw fit to exercise the powers vested in her, did not
clearly indicate an intention on his part to postpone the vesting
of the remainders until the death of his widow.   The only
effect, so far as equality of distribution is concerned, is that if
the estates are held to be contingent the remaindermen get
equal shares in their respective estates in remainder, which
cannot be disturbed by the trustee for the reason that her
powers to dispose of any part of the estate died with her; but
the equality of their respective estates would be the same
under either construction ; therefore, to declare the estates
contingent on account of this declaration of the testator for
equality of distribution, would, we submit, be giving it undue
importance in the construction of the will under consideration,
and would put the testator in the position of appearing to have
taken into consideration theoretical results rather than actual
results.

(*c*) The last point of difference between the illustration and
the case at bar is that in the former B acquires an estate upon
A's death, and no provision is made as to what becomes of
the estate in the event of B's death ; while in the will under
consideration, Mr. Shriver devised and bequeathed "All my
estate, real and personal, remaining at the death of my said wife

to my children by my said wife, share and share alike, absolutely
and in fee-simple, the child or children of a deceased child to
stand in its or their parent's place and stead, and to receive
and have the share and interest its and their parent would have
been entitled to if living."

We contend that by providing for the substitution of his
grandchildren in place of their parents, if the latter should die
before his widow, the testator did not intend to make the re-
mainders contingent on the devisees and legatees surviving
her.    That this is so, is well settled by the decisions of this
Court; *Ridgely* v. *Ridgely,* 100 Md. 230; *In re Rogers Trust
Estate,* 97 Md. 674; *Hoover* v. *Smith,* 96 Md. 393; *Cox* v.
*Handy,* 78 Md. 108; *Engel* v. *State, use of Geiger,* 65 Md.
539, 545; *Meyer* v. *Eisler, Trustee,* 29 Md. 28.

It was argued in the Court below that *Cox* v. *Handy* could
be distinguished from the case at bar on the ground that in
the will in that case the testator designated his children by
name, whereas, Mr. Shriver, the testator, did not.    This dis-
tinction, however, is not sound, when we consider that Mr.
Handy did not designate his grandchildren by name, and yet
the Court decided that the grandchildren took vested remain-
ders upon their parents' deaths.

The learned Judge below in his opinion, cites in support of
his conclusion *Demill* v. *Reid,* 71 Md. 175; *Larmour* v. *Rich,*
71 Md. 369; *Small* v. *Small,* 90 Md. 550.

We think that the provisions of the wills in these cases
make it clear that they are so absolutely and essentially different
from the language and provision of the will under considera-
tion, that no decisions construing them can be used as authority
in this case for holding the remainders herein are contingent
and not vested.    In neither case was the event upon the hap-
pening of which the remaindermen were to come into the en-
joyment of their estates, an event sure to happen, namely, the
death of the life tenant; but there were age qualifications and
other contingencies which might never be gratified or happen.
In the case at bar, on the other hand, the only thing standing
between the remaindermen and the enjoyment of their re-
spective estates was the life of testator's widow.

If the remainders are vested, then upon the death of Carrie Reese, her children, Augustus Shriver Reese and William Reigart Reese, took their mother's share of the estate as sub-stituted legatees and devisees under the will of their grandfather, Augustus Shriver. They took by purchase and not by descent. *Hoover* v. *Smith*, 96 Md. 397, 398; *Cox* v. *Handy*, 78 Md. 108, 127; *Demill* v. *Reid*, 71 Md. 175, 193.

Augustus Shriver Reese died on July 31st, 1877, intestate, and thereupon his share (which was one-half of his mother's share) in his grandfather's estate, went as to the realty to his heirs-at-law, and as to the personalty, to his personal representatives. His heir-at-law, he dying unmarried and having no descendants, was his brother. Therefore, upon the death of Augustus Shriver Reese there became vested in his brother, William Reigart Reese, the entire interest in the real estate, included in the remainder which first vested in his mother. When William Reigart Reese departed this life on August 5th, 1877, this interest in the realty passed to his heir-at-law, who was his father, Edward Reese. With this interest in the realty vested in him, Edward Reese died having first made a will whereby he left everything to his widow, Margaret, now Margaret A. Landon, one of the appellants. Margaret A. Landon is by virtue of this will and by force of these circumstances entitled to the real estate which in part composed the share of the Reese children in their grandfather's estate. As to the personalty belonging to their share in the estate, that passed to Clymer Whyte, the administrator, who has taken out letters of administration on their estates, and is one of the appellants here. When the personalty is received by him, it would be distributed to the persons entitled thereto, namely, Mrs. Landon, as executrix of the late Edward Reese, father of Augustus Shriver Reese and William Reigart Reese.

We, therefore, submit that the learned Court below erred in overruling the exceptions of Margaret Landon and Clymer Whyte, administrator, to the accounts which did not allow to the former one-eleventh of the proceeds of the realty; and to the latter one-eleventh of the proceeds of the personalty.

It is wholly immaterial that this one-eleventh of Mr. Shriver's estate passes from his family.   He had power to provide against the contingency which has happened.   He did not see fit to direct what should become of the share of his daughter should she die without children living at the death of his widow.   A new stock was thus created.   His two grandchildren became entitled to his daughter's share, and the fact that they did not survive their grandmother, makes no difference.   It is precisely what happened in *Cox* v. *Handy.* As above said, Jesse T. Handy, one of the sons, survived the testator, and died without leaving children before the life tenant.   By his last will he gave all his property to his wife for life, with power to dispose of it at her death.   She also died before the life tenant, having disposed of the property in controversy by will.   The contingency of Jesse dying without issue, was not provided for in the will, and it was decided that his share went according to the powers created under his wife's will, this Court saying at p. 126:   "We understand that no question is made about the devolution of the property under these wills."

So in *Hoover* v. *Smith,* 96 Md. 393–398, where the will construed contained provisions similar to those found in Mr. Shriver's will, it was held that the remainder was vested, and that the father of one of the sustituted legatees—a deceased granddaughter of the testator—took as her representative, although she died after the testator, but before the tenant for life.   According to these authorities, the shares of the infant children of Mrs. Reese ultimately devolved upon Edwin Reese, their father, who was their heir-at-law and next of kin.

*Charles E. Fink* and *Jno. Milton Reifsnider,* for the children and grandchildren of Augustus and Caroline Shriver, appellees.                ·                                          ₒ

The children of Augustus Shriver by his then wife together with the children of any deceased child, living at the death of his widow, Caroline Shriver, take what is left of his estate at her death, *as a class,* to the exclusion of any of the *class* who

may have died prior to the death of the widow, Caroline Shriver, that is, the survivors alone of the class take. *Demill* v. *Reid*, 71 Md. 175–191, where the Court says: "It seems to us to be clear law, as well as good sense, that in a case like this where there is an ultimate limitation upon a contingency to a *class of persons* plainly described, and there are persons answering the description *in esse* when the contingency happens, they alone can take." See also *Webber* v. *Jones* (Me.) 47 Atl. Rep. 905.

We contend that the class during the period between the death of Augustus Shriver and the death of his widow, had no interest whatever in the testator's estate except that of a contingent remainder; they had neither a vested interest, nor a vested interest subject to be divested.

A will is construed according to the intention of the testator. If the intention of the testator is plain, recognized rules of construction are not applied, otherwise the intention of the testator would often times be defeated. *Cox* v. *Handy*, 78 Md. 108–123.

In the case at bar the *will* of the testator and the surrounding *circumstances*, as the Courts so frequently announce, plainly show that the above-mentioned class took only a contingent remainder in whatever of his estate *remained undisposed of at the death* of his widow, Mrs. Caroline Shriver.

It is true that in certain decisions upon wills, utterly unlike the provisions in the will in this case, the Court of Appeals has said that the right to diminish the estate or share of the remainderman by letting in after born children will *not of itself* create a contingent remainder; that a devise to a wife for life with right to dispose of her interest or to decrease the estate by waste will not *of itself* create a contingent remainder; that a precedent trust estate, a naked trust or trust with power only to *sell and reinvest*, and pay over income to *cestui que trust, of itself*, does not create a contingent remainder; or where a mere naked question is presented without any such other provisions as exist in this will as was the case in *Cox* v. *Handy*, 78 Md. 108.

(*a*) But where the remainder over is to a class and not to persons designated by name, it is held to be a contingent remainder, *unless* a plain intention to the contrary appears in the will. *Webber* v. *Jones* (Me.) 47 Atl. Rep., 903; *Demill* v. *Reid*, 71 Md. 175.

(*b*) Where there is an antecedent trust estate, where both the legal and equitable title are vested in the trustee, with absolute power to the trustee to sell and dispose of the entire estate as fully as the testator himself could have done had he lived, and to use up the same in the support of herself and children, and for the education of their children and for their *advancement* in life with a remainder over of what remains undisposed of, if any, to his children, the child or children of a deceased child to receive and have the share or interest its or their parent would have been entitled to if living; clearly and undoubtedly creates a contingent remainder.

It means, the child shall receive the share its parent would have been entitled to *if living at the death* of testator's widow (*Cox* v. *Handy*, 78 Md. 108–123); the testator clearly means to say, that prior to his widow's death his children are not entitled to anything, but will only be entitled to a share or interest at his widow's death and then only if they survive that event; these words "the share or interest its or their parents *would have been* entitled to if living" can be construed no other way; he does not say the share its parent *would be* entitled to if living, but *would have been* entitled to if living at the time of his widow's death; in other words, the testator in effect says by that clause in his will, that none of his children will be entitled to any *share or interest* in his estate until the death of his widow except what of course the trustee in her discretion chose to give them for their support, education and advancement in life; the word *interest* has an important bearing in the construction of the will.

The power of sale in the trustee is clearly inconsistent with the construction giving the children a vested interest before the death of their mother. The powers of management, sale and investment given to the mother as trustee, show beyond

question that the legal title was, during her lifetime in her, in order that she might effectually perform the duties imposed on her by the testator, and we think it equally clear that it continued so vested in her for the purposes required by the will.

It is evident if there was an equitable or beneficial interest vested in the children under the will, the estate might have been disposed of by them long before the trustee's death, and. the power of sale given would have been nugatory. *Small* v. . *Small*, 90 Md. 550, 556; *In re Banks' Will*, 87 Md. 425.

The case of *Cox* v. *Handy*, 78 Md. 106, is not analagous to this case, because in that case the gift was to children of the testator, all of whom are designated by name in a prior clause of the will. 78 Md. 122. And it was this which largely influenced the Court in its decision in that case as is evident from the language used when the Court on p. 122 says: "In the present case as the gift is to the children of testator, of course, none of the objects of this clause of the will could come into existence after his death."

*Jno. Milton Reifsnider* and *Charles E. Fink*, for Margaret L. Roberts, appellant.

*F. Neal Parke* (with whom were *Roberts & Crouse* and *J. A. C. Bond* on the brief), for John M. Roberts *et al.*, trustees, appellees.

BOYD, J., delivered the opinion of the Court.

There are two appeals in this record—one of which was taken by Margaret L. Roberts from that portion of a decretal order of the Court below, which determined that her interest in her father's estate passed to Messrs. Roberts and Reindollar, trustees, under a deed of trust made by her and her husband, and the other by Margaret A. Landon and Clymer White, administrator, which involves the construction of the will of Augustus Shriver. The property of the testator having been converted into cash, the questions arising were presented by exceptions to audits. We will first consider the. appeal last mentioned.

1. Augustus Shriver was married twice, and died on the 28th of July, 1872, leaving surviving him a widow, two children by his first wife and eleven by his second. After bequeathing one hundred dollars to each of the two children by his first wife and providing for payment of his debts and funeral expenses, he devised and bequeathed all the rest and residue of his estate to his wife "for and during the term of her natural life; *in trust* for the use and benefit of herself and our children"—expressing his confidence that she would manage it as would be most advantageous to herself and children. He then authorized his wife to sell any part of the real estate which she thought proper—"the proceeds of such sale or sales to be invested upon the trusts of this will"—and also to lease the real estate. He further gave her authority to use so much of the principal as may be required, "if it shall be necessary for the support of herself and our children, or for their education or advancement in life (all of which I confide to her discretion)," but recommended that she should not sell the farm on which he resided unless absolutely necessary. Then follows this clause, "I devise and bequeath all my estate, real and personal, remaining at the death of my said wife, to my children by my said wife, share and share alike, absolutely in fee-simple, the child or children of a deceased child shall stand in its or their parents place and stead, and receive and have the share and interest its and their parent would have been entitled to if living." He appointed his wife guardian of their children until they were twenty-one years of age, and sole executrix of his will.

Mrs. Shriver, the widow, died May 1st, 1902, having disposed of a part of the *corpus* of the estate, in pursuance of the power conferred upon her. Two of the eleven children died after their father and before their mother—Alice E., who married George R. Gehr and left four children, and Carrie, who married Edwin Reese, leaving her husband and twin boys surviving her. Those twins died a few days after their mother. Edwin Reese, the husband of Carrie, married Margaret A. Adams after the death of his two children, and died November

22nd, 1887, leaving all his property of every character and description to his wife, Margaret. She afterwards married Thomas D. Landon. Letters of administration were granted to Clymer Whyte on the estates of the two Reese children. The statement of these facts will suggest the claim of Mrs. Landon, that is to say ; that the two Reese children took their mother's interest in the estate of Augustus Shriver, and having died intestate their interest went to Edwin Reese, their fatheir as heir-at-law and next of kin, who by his last will and testament left them to his widow, who is now Mrs. Landon, one of the appellants—the children of the testator according to Mrs. Landon's contention, having taken vested remainders in his estate.

It will be observed that the testator left his entire estate (after payment of debts, funeral expenses and legacies) to his wife "for and during the term of her natural life in trust for the use and benefit of herself and our children." The legal title was therefore vested in her and she and their children were the *cestuis que trustent.* The widow and eleven children held the equitable estate and were the beneficial owners during the widow's life. If the testator had simply left his estate to his widow and their eleven children, during the life of the former, and at her death to the eleven children, there could be no doubt that the children would have taken *vested, not contingent*, remainders in the estate. It is thoroughly settled in this State that "it makes no difference, as to the vesting, whether the legal estate be devised to trustees who are required to convey according to the directions of the will, or whether the interest is provided to take effect without the intervention of trustees, nor that the trust provides for the accumulation of income until the period of payment or distribution arrives." *Tayloe* v. *Mosher*, 29 Md. 451; *Ellicott* v. *Ellicott*, 90 Md. 329.

The power given Mrs. Shriver to sell the real estate and invest the proceeds upon the trusts of the will was certainly not sufficient to show an intention to create a contingent instead of a vested remainder, nor was the power to lease it. Nor can it be said that the power to use so much of the prin-

cipal as was necessary for the support of herself and children or for their education or advancement in life necessarily made these contingent remainders. Although that power was expressly confided to her discretion, he did not give the estate to her to do what she chose with it, for her own benefit, but she could only use it for the purposes named, that is to say, for the support of herself and the remaindermen, or for the education or advancement in life of the latter. In *Benesch* v. *Clark*, 49 Md. 497, it was said that where an estate is given to a person generally or indefinitely with the power of disposition, such gift carries the entire estate, and the devisee or legatee takes the property absolutely, but when the property is given to one expressly *for life*, and there be annexed to such gift a power of disposition of the remainder, the rule is different and the first taker takes only an estate for life, with the power annexed. That has been approved in *Foos* v. *Scarf*, 55 Md. 310; *Russell* v. *Werntz*, 88 Md. 214, and other cases. It is clear from those decisions, and authorities cited in them, that there may be a valid devise to one *for life* with a power of disposition which will not affect the remainder over, unless the power is exercised as authorized, and as to any part of the estate upon which the power is not exercised the remainder is unaffected.

It is equally clear that the clause in the will last quoted does not of itself make these remainders contingent. . The testator, having given his widow a power of disposition, naturally and properly spoke of his estate "remaining at the death of my said wife," but that would not convert what would otherwise have been a *vested* into a *contingent* remainder. The remainder may vest subject to the power, and the uncertainty as to whether the power will be exercised as to all or part of the estate does not make it a contingent remainder. As was well said in *Ducker* v. *Burnham*, 146 Ill. 10: "If the remainder is contingent because it may consist of what remains after the exercise of the power of sale and use conferred upon the life tenant, then, in case the life tenant should fail to sell any of the estate or to exhaust for her own use any of the principal

thereof, the remainder would still be contingent because it would consist of what remains after paying off the charges created upon the property by the directions to pay the debts and the bequests. To hold that a remainder is contingent, because it cannot be known how much will be left until the debts and funeral expenses and other charges are paid, would make every remainder given by will a contingent one. But it is well settled that a devise to a person after the payment of debts and legacies is not contingent until such debts and legacies are paid, but confers an immediately vested estate. (*Scofield* v. *Olcott, supra.*) In such cases the remainder vests subject to the payment of debts and legacies and subject to the exercise of the power to use and sell, but liable to be divested as to so much of the estate as may be disposed of for the payment of debts and legacies, and by the execution of the power. The remainder is not made contingent by uncertainty as to the amount of the estate remaining undisposed of at the expiration of the life estate, but by uncertainty as to the persons who are to take." See also *Heilman* v. *Heilman*, 129 Ind. 59; *Woodman* v. *Woodman*, 89 Me. 128; *Burleigh* v. *Clough*, 52 N. H. 267, and other cases cited in 24 *Am. & Eng. Ency. of Law*, 389.

It is not necessary to go beyond our own decisions to find authorities on the subject, but the above quotation from *Ducker* v. *Burnham*, seems to be very apt. In *Tayloe* v. *Mosher, supra*, the testator, after making certain devises, bequests, and dispositions in favor of his wife and servants, devised his estate not otherwise specifically disposed of to trustees. He directed them to pay certain annuities, and then to invest "the clear income of my estate, if anything remain after the application annually or otherwise of the several sums of money hereinbefore charged thereon," and provided: "Upon the death of my son William, I will and desire that a *distribution* of my estate be made among *all my grandchildren*, to-wit: The children of my late son James Mosher, and the children of my aforesaid son William, *provided* any child he shall leave. All my said grandchildren to take *per capita.*" The

Court said: "It is doing no violence to this language or to any rule of law to hold that the children of James, who were *in esse* at the date of the will and of the testator's death, took vested interests, liable to be divested *pro tanto* for the purpose of letting in for a share any child that William, who then had none, might, by possibility, have, and leave surviving him. *The fact that an estate is liable to be divested in whole or in part upon a contingency, does not make it a contingent estate."* See also *Dulany* v. *Middleton,* 72 Md. 67, for a similar decision. It would seem, then, to be clear that the reference to the estate "remaining at the death of my said wife" did not make the remainder contingent.

But it is argued, and was so held by the learned Judge below, that the rest of this clause shows that the interests left to the children were contingent—that their right to participate in the distribution of his estate was contingent upon their surviving the testator's wife. But we cannot see how that clause indicates an intention on the part of the testator to create contingent remainders. The wife might in her lifetime have given one child more than she gave another, and that child might have survived her mother, while the other who received very little might have died, without issue, before her mother. It would seem to be more in accordance with the intention of the testator, and more natural for him, to vest the remainder in his children at his death. We have seen what confidence he had in his wife's judgment and sense of justice, and he was willing for her to decide what was necessary to be expended for the support of herself and children, and for their education or advancement in life. He did not direct that any charge should be made against them for sums thus advanced in excess of what was given others, and, even if the remainder be treated as contingent, those thus favored might survive their mother and receive a share of the remaining property. The equality of distribution does not in any way depend upon whether the remainders were contingent or vested. It is a familiar but important rule that the law favors the early vesting of estates, and it is likewise a well-recognized rule of con--

struction that in doubtful cases the interest should be deemed to be vested in the first instance, rather than contingent, unless the instrument under consideration does not admit of such construction. It cannot be doubted that Mr. Shriver did not intend to die intestate as to any part of his estate—he prefaced his will with the statement "subject to the payment of my debts and funeral expenses *I dispose of all my estate* in manner and form following." Yet it was quite possible, although not probable, that all of the childeren by his second wife might have died without leaving issue before his wife died, and in that event there would have been an intestacy as to the remainder, if it must be regarded as contingent. The children provided for during the lifetime of his wife—"our children," that is those of his second wife and himself—were the same who were referred to in the clause under consideration—"my children by my said wife." Mrs. Reese was one of those children and left two children who would admittedly have been entitled to their mother's share if they had survived their grandmother. The testator did not leave the remainder to such of his children as survived his wife, or to such children and grandchildren (children of a deceased child) as survived her. He did make provision in that clause for the share and interest of a deceased child who had died leaving a child or children, but made none as to the share of a deceased child who died without leaving issue. The provision that "the child or children of a deceased child shall stand in its or their parent's place and stead and *receive and have* the share and interest its and their parent would have been entitled to if living" is not of controlling effect on this question by reason of the use of the words "receive and have." That was speaking of the period of *distribution,* and whether vested or contingent, the remaindermen were not entitled to "receive and have" their shares until that time arrived. The trustee was to receive, have and hold the estate until then, excepting such part as she previously disposed of under the other provisions of the will. Without further discussion of this clause it is sufficient to say that we do not find anything in it which necessarily in-

dicates an intention on the part of the testator to create contingent remainders, and it will be well to now see what this Court has said about the effect of similar or analogous provisions in other wills.

In *Meyer* v. *Eisler*, 29 Md. 28, the testator after making certain bequests and legacies, gave all the rest of his estate to his wife and another *in trust*, to hold the same with the surplus or unappropriated revenue or income arising from the same, etc. He then authorized them to receive all rents, issues, interest and profits arising or growing out of the property, and from the amounts so received to pay insurance, taxes, and repairs, and out of the residue to pay his wife for her use and benefit one-third part, and directed the balance of the income to be invested in Baltimore City stock to be held *in trust* with the other property, until the end of twenty years after his death, or until his youngest child should arrive at the age of twenty years, and then the whole, including principal and interest, to be divided and paid over as follows: To his wife one-third part "and the other two-third parts to all my children, share and share alike  *  *  *;  and in the event of the death of either of my said children, leaving lawful issue, such issue to have and receive the share or proportion that the deceased would have been entitled to if living." He then provided for a similar distribution of the third left to his wife in case she "shall be dead at the time of such division." Elizabeth, one of the children, after the testator's death, married John Rose, and subsequently died before the time had arrived for a division of the estate, intestate and without issue. The widow also died before that time. This Court held that the children took a vested interest in the property devised to them, and that John Rose, as husband of Elizabeth, was entitled under the statute then in force to a life estate in her share of the realty, and absolutely to her share of the personalty. That case is strikingly similar to the one under consideration, and has been fully approved in *Tayloe* v. *Mosher*, *supra*; *Small* v. *Small*, 90 Md. 568, and. *Daughters* v. *Lynch*, 93 Md. 305, and other cases.

In *Cox* v. *Handy*, 78 Md. 108, the testator left certain real and personal property to his wife for life, and his will contained this clause: "It is my will that after the death of my wife, Mary Ann Handy, all the property devised to her for life * * * shall be sold if necessary for equal partition, or if the same can be accomplished without a sale, shall be divided amongst my children, share and share alike, the child or children of any deceased child to take the portion to which the parent, if living, would have been entitled." This Court held, "that a share of the property vested in each of the children of Wm. W. Handy, who survived him, but if any such child should leave children at his death, his share was divested in favor of his children; and that it was not divested by the death of the child in the lifetime of the tenant for life without leaving children," and in the opinion delivered after a motion for reargument it was said "A share of the property vested in each of the children who were living at the time of his death, and if any child died before the period of distribution, leaving children, they were substituted in his place; his share however was not divested if he left no children, but it went to his representatives." That case has been recently approved in *Hoover* v. *Smith*, 96 Md. 393, and *In re Rogers' Trust Estate*, 97 Md. 674.

The cases we have cited would seem to conclusively show that these remainders were vested and not contingent. This opinion has already reached such length as to make it undesirable to attempt to discuss in detail the authorities relied on by the appellees—such as *Demill* v. *Reid*, 71 Md. 175; *Larmour* v. *Rich*, Ib. 369; *Small* v. *Small*, 90 Md. 550. In the latter JUDGE FOWLER referred to *Larmour* v. *Rich*, and said: "The distinction is clearly drawn between that class of cases where the estate or interest vests at the death of a testator, because of an absence of any expressed intention that it vest later, and those where the testator by his will fixes a more distant period for the vesting." It is sufficient to say that in our opinion the testator did not by his will express or indicate an intention that the remainder of his estate should not vest until after his

wife's death.   In the very recent case of *Ridgely* v. *Ridgely*, 100 Md. 230, many of the cases affecting this question are cited.   *Engel* v. *Geiger*, 65 Md. 539; *Small* v. *Small*, and *Larmour* v. *Rich*, are there included in the class of cases where gifts were made for life and then over to survivors—in which cases the period of survivorship is generally referred to the period of distribution and not the death of the testator. There is no reference to survivorship in this will.   In *Daughters* v. *Lynch*, *supra*, we repeated what had been said in *Tayloe* v. *Mosher*, that, "estates will be held to be vested wherever it can fairly be done without doing violence to the language of the will, and to make them contingent there must be plain expressions to that effect, or such intent must be so plainly inferrible from the terms used as to *leave no room for* construction."   We are therefore of the opinion that the Court erred in rejecting the claims of Margaret A. Landon and Clymer Whyte, administrator, for the shares claimed by them respectively—the one being for this interest in the real property, and the other for that in the personalty distributed.

2. This brings us to the consideration of the appeal of Margaret L. Roberts.   Having held that the children of Mr. and Mrs. Shriver took vested estates, it will not be necessary to determine whether a deed of trust such as that made by Mr. and Mrs. Roberts to Messrs. Reindollar and Roberts, trustees, would include a *contingent* remainder.   The appellant contends that the deed of trust did not pass the interest of Mrs. Roberts for several reasons which we will briefly refer to.

(*a*) It is claimed for her that it does not contain a description of the real estate sufficient to identify it with reasonable certainty, as provided in sec. 9 of Art. 21 of the Code.   The description in the deed of trust is "all and singular the real and personal estate, wheresoever situate, * * * and all other property of every nature, kind and description and wheresoever situate (except so much thereof as is exempt from execution) of us the said" William and Margaret.   It is difficult to understand how it would be possible to identify property intended to be conveyed more thoroughly than is

done by that description.   The intention manifested on the
face of the deed was to convey and assign *all of their property
of every nature, kind and description.*   If they had undertaken
to specify it, some might have been omitted and to show on
the face of the deed that they intended to make an assign-
ment of all property, it would have been necessary to have
added some such clause as the one that was inserted.   This
Court decided in *Maughlin* v. *Tyler*, 47 Md. 545, and other
cases, that a deed of trust for the benefit of creditors, creating
preferences and exacting releases, is void unless it appears *on
its face* to convey all the property of the debtor.   It is true
this deed does not create preferences or exact releases, but if
the position of the appellant be correct as to the effect of this
statute, it would be difficult to ever comply with the require-
ments of the law as announced in *Maughlin* v. *Tyler*.   If a
grantor intends to convey part of his property, of course he
must describe it specifically, but if he intends to convey all of
it and uses such language as is in this deed, who could be
misled or in doubt as to what he conveyed?  · The object of
sec. 9 is to require sufficient notice to the public and certainty
as to what is conveyed.   As well might it be required of a
testator to specify his property in detail in a residuary clause
in his will as to require a debtor making an assignment for the
benefit of his creditors to do so.   This statute has never been
construed to require a schedule or list of the grantor's prop-
erty to be set out in such a deed, and so far as we are aware
it is the universal custom throughout the State to use terms
similar to those in this deed, when it is intended to make a
general assignment of all the debtor's property.   In *Carey's
Forms of Precedents*, p. 371, a very similar description of prop-
erty is given for such a deed of trust and there have been
many cases in this Court where such descriptions were given,
and never questioned.   The case of *Farquharson* v. *Eichelber-
ger*, 15 Md. 63, is conclusive of the question.   It is said by
the appellant that as it was decided prior to the Act of 1856,
ch. 154, sec. 24, which is now the section of the Code above
mentioned, the effect of the statute was to change that deci-

sion.   But that was "An Act to simplify and abridge the rules and forms of conveyances," and if such a description was valid before the rules and forms were simplified, surely it is now. In our opinion the statute does not in any wise invalidate this instrument.

(*b*) It is further contended on behalf of Mrs. Roberts that the deed of trust only conveyed the joint estates of her husband and herself—that she united in the deed simply to convey her potential right of dower.   We find nothing in the deed that sustains that contention.   It recites that they are "indebted unto sundry persons and corporations in several sums of money, and being unable to pay the same in full have proposed and agreed to *assign all our property*   *   *   *   in trust for the benefit of *our* creditors, as hereinafter mentioned." It then assigns the property as we. have stated, and after giving the trustees authority to convert it into money and providing for costs, etc., directs them to apply the residue of said moneys in payment of the several debts due to the creditors aforesaid *of us*, the said William Jesse Roberts and Margaret L. Roberts, his wife, *pari passu*, and without any preference or priority of payment" and after the payment of debts, costs, expenses and commissions, "then in trust to apply the surplus (if any), unto the said William Jesse Roberts and Margaret L. Roberts," etc.   It seems clear to us, therefore, that Mr. and Mrs. Roberts not only conveyed and assigned any property owned by them jointly, but all they owned individually. Whether or not she owed any individual debts which are entitled to be paid we have no means of knowing, and we do not intend to determine how the money realized from her father's estate is to be distributed by the trustees.   That can be disposed of in the proceeding in which they make distribution.

(*c*) After having determined that the interests of the children of Mr. Shriver under his will were vested remainders, we do not deem it necessary to discuss at length the question as to whether Mrs. Roberts' interest passed by the deed of trust as we think it did.   A vested remainder can be devised, mort-

gaged or conveyed. It also is liable to execution by a judgment creditor. *Armiger* v. *Reitz*, 91 Md. 334. We are of the opinion, therefore, that Mrs. Roberts' interest should be distributed to the trustees named in the deed of trust, and it can then be determined what creditors are entitled to it. As the Court below so decided, although on a different ground, as to Mrs. Roberts' interest, that part of the decretal order will be affirmed, but as we do not agree with the Court as to the interest that would have gone to Carrie Reese, and is now claimed by Margaret A. Landon and Clymer Whyte, administrator of Augustus Shriver Reese, and of William Reigart Reese, the portion of the order appealed from by them will be reversed. Of course we do not mean to disturb the portions of the decretal order not appealed from.

Decretal order affirmed in part and reversed in part—the costs in No. 18 (office docket) to be paid by the appellant in that case, including one-half of the cost of transmitting and printing the record, and the costs in No. 19 (office docket) to be paid out of the estate of Augustus Shriver, including the other half of cost of transmitting and printing the record (one-half by the trustees and the other by the receiver)—and cause remanded for further proceedings in accordance with this opinion.