STATE ROADS COMMISSION OF MARYLAND
*v.*
PRESTON ET UX.

[No. 24, September Term, 1961.]

444

*Decided October 12, 1961.*

The case was argued before BRUNE, C. J., and HENDER-SON, PRESCOTT, HORNEY, and MARBURY, JJ.

*Earl I. Rosenthal,* with whom were *Thomas B. Finan* and *Joseph D. Buscher,* for the appellant.

The Court declined to hear argument for appellees. *T. Carroll Brown* and *Franklin Somes Tyng,* on the brief, for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Harford County granting the appellees' prayer for a permanent injunction to enjoin the appellant from causing or permitting surface water from State Route 22 to flow onto the appellees' land, and to fill a ditch which appellant has made on the land of the appellees.

The appellees, Benjamin Burdell Preston and his wife, are the owners of a tract of land in Harford County, which now contains approximately 35 acres, fronting on the general southerly side of the Aberdeen-Churchville Road, known as Maryland State Route No. 22, for a distance of some 1700 feet.

Originally, the property consisted of about 45 acres, but, in accordance with their plan to sell a substantial portion thereof as residential building lots, the appellees have subdivided a part of the property and have sold building lots therefrom, which lots have been improved by valuable and attractive homes.

The terrain in the most westerly portion of the property slopes generally from north to south and from west to east. Some of the land has a higher elevation than the bed of old Route 22, and in some places the elevation is slightly lower. Before being reconstructed in 1955, Route 22 was a 16-foot

macadam road with a crown. Surface water therefrom in the vicinity of the westernmost portion of the appellees' property was drained into ditches running parallel with both sides of the road, with the water flowing in an easterly direction. When the water reached a point considerably to the east of the appellees' boundary, the water in the ditch on the south side of the road (the front of appellees' land) was carried under the road through a pipe to the north side and drained on that side of the highway. In the vicinity of Station 193 on appellant's plats 9700 and 9701, there were no drain pipes under the road, nor was any water drained onto appellees' property from the road; the land in this area was tilled for farming purposes and was not eroded.

In the early part of 1954, the appellant began acquiring land from abutting property owners, in connection with its plans to widen Route 22. In May, Eugene L. Jones, representing the appellant's Right-of-Way Department, got in touch with the appellees in regard to acquiring a portion of their property. After negotiating, Jones filled in the blanks of a printed form of option agreement used by the appellant, which the appellees then signed. Thereafter, on August 3, 1954, the appellees went to the office of the appellant's local attorney and executed the usual State Roads Commission's printed form of deed.

In the spring of 1955, the appellant proceeded to widen, grade and rebuild said Route 22 so that the width of its travelled surface was changed from 16 feet to 24 feet, with two 10-foot stabilized shoulders, making a total impervious surface of 44 feet in width. The crown of the old road was practically eliminated. Because of the greatly increased width of the new road and the substantial amount of surface water which resulted, the appellant devised a drainage scheme whereby surface water flowing off the north side of the road, for a distance of about 600 feet west of said Station 193, is collected into a ditch on the north side of the road and is drained in an easterly direction to a catch basin. This water is then carried under and to the south side of the road by means of a 24-inch reinforced concrete pipe, which is connected with a ditch which the appellant has made on the ap-

pellees' property opposite said Station 193. In addition, surface water draining from the south side of the road, for a distance of about 500 feet west of Station 193, is collected in a ditch constructed on the south side of the road, and running parallel with it; and this water is drained in an easterly direction to the southern end of the said 24-inch concrete pipe, where it merges with the surface water draining from the north side of the road. The combined streams of surface water are then directed upon the appellees' property, where such water had never previously been collected or discharged. The water and accumulated debris are then dumped and abandoned. As a direct result, considerable erosion has occurred on the appellees' land, and a ditch 3 feet in depth and 150 feet in length has been created thereon. At the southern end of the ditch the water diffuses, causing the relatively flat land there to become soft and marshy, and useless for any purpose. Philip Webster, a realtor, testified that at least two potential building lots fronting on Route 22, having a total value of $4,000 are rendered worthless, and that two to three acres of back land, valued at between $800 and $1,000 per acre, have been made useless.

We find it unnecessary to set forth the details of the negotiations that resulted in the execution of the option agreement nor the circumstances surrounding the signing of the deed, for the trial court made three findings of fact; which, after a careful examination of the record, we conclude should be affirmed. Maryland Rule 886. These findings were: (1) that the Prestons did not actually know that a drainage system would carry water onto their land at Station 193 either on the date the option was executed, or on the date the deed was executed; (2) that the Prestons first learned of the drainage system at Station 193 when they returned to their home from a trip to Virginia, and found it virtually completed; and (3) that the Prestons, thereafter, made a timely demand upon the State Roads Commission for satisfaction, and, failing to receive such, promptly initiated this suit.

We, therefore, must examine the option, deed and plats to ascertain whether they granted the right to the appellant to discharge the accumulated water onto appellees' property at the point referred to as Station 193 on Plat 9701.

The option which was obtained by the appellant from the appellees gave the commission the right and option to purchase for $750 at any time within six months from May 7, 1954, the following:

"(C) ALL THE LAND AND PREMISES, together with the appurtenances thereto belonging, or in anywise appertaining, lying between the outermost lines designated 'Right of Way Line' as shown and/or indicated on 'State Roads Commission of Maryland's Plats Numbered 9699 Rev. 4-23-54, 9700 Rev. 4-23-54, 9701, all of which plats are made a part hereof, and which are duly recorded, or intended to be recorded among the Land Records of the aforesaid County (ies).

"(D) TOGETHER with the right to create, use and maintain on the land shown hatched thus [///] on the above mentioned plats, such drainage structures, stream changes and facilities as are necessary in the opinion of the State Roads Commission to adequately drain the highway and/or adjacent property and such slopes as are necessary to retain the highway and/or adjacent property; it being agreed between the parties hereto, however, that at such time as the contour of the land over which this easement is granted is changed so that the easement required for slopes is no longer necessary to support or protect the property conveyed in fee simple, then said easement for slopes shall cease to be effective.

"(E) TOGETHER with the right to create use and maintain on or across the adjacent land of the 'GRANTORS' such waterways and/or inlets and outlets as are necessary in the opinion of the State Roads Commission for the drainage structures indicated in the legend shown in the left hand corner of the above mentioned plats.

"(F) TOGETHER with the right to create use and maintain on the land shown cross-hatched thus [xxx] on the above mentioned plats such stream changes and facilities as are necessary in the opin-

ion of the State Roads Commission to care for whatever drainage structures that may be determined necessary by the State Roads Commission for the above mentioned project."

The deed, in addition to incorporating by reference the option agreement, included the above language almost verbatim.

The plats referred to in the option and deed indicate that the State Roads Commission intended to and did take, in fee simple from the Preston tract, a strip adjacent to the then existing road of an average width of about forty feet, which contained about 1.74 acres, and, as slope easements, two strips of varying widths adjacent to the area to be taken in fee. These easement strips which are single hatched (///) on the plats are separated by a distance of approximately four hundred feet. An examination of the plats discloses that there is no easement area between Station 189 + 75 of Plat 9700 and Station 194 of plat 9701. It is in this space between the two easement strips that appellees' land is being damaged by the flow of water. At the upper left-hand corner of Plat 9701 this legend appears:

"Note.—Among the drainage structures for the proposed improvement are included structures at the following stations: sta. 193 +"

In addition to the provisions of the Code (1957), Article 21, Section 5 (formerly Section 13), relating to descriptions in deeds generally, there are two additional sections that apply specifically to acquisitions by the State Roads Commission.[1]

---

1. Article 21, Section 5, provides: "All deeds conveying real estate which shall contain * * * a description of the real estate *sufficient to identify the same with reasonable certainty, and the interest or estate intended thereby to be conveyed,* shall be sufficient, if executed, acknowledged and recorded * * *."

Code (1957), Article 89B, Section 8 (c), in pertinent part, states: "Where any interest in real property is acquired under this section, [for road construction purposes, etc.] the deed * * * shall

A reading of paragraphs D and F, above, indicates that they are somewhat repetitious in nature, but the witness, Jones, who represented the appellant in the instant transaction and who was called as its witness, testified that paragraph D, which calls for plain hatching (///) on the plats, was generally used for slope easements, and the double, or cross, hatching (xxx) was utilized for the purpose of delineating drainage easements. He further testified, flatly, in response to questions propounded by appellant's counsel, that the appellant was not taking an easement area in the appellees' property other than for slope, and appellant's entire right of way, except the slope easement (which, of course, is "plain hatched" on the plats and concerning which there is no dispute), was confined within "the fee simple lines in that area." Of course, the specific kind of hatching necessary or permitted to indicate drainage easements on the appellant's plats is not of great importance in this case, for, as pointed out above, there is no hatching of any kind at the place where the appellees' land is being flooded.

The appellant relies heavily upon paragraph (E) and the legend in the upper left-hand corner of Plat 9701 to support its claimed right to flood appellees' land. This is not a case that involves determining the respective claims of the parties concerning an alleged ambiguity in a deed; our inquiry is whether the description in the conveying instruments is sufficient to sustain the asserted right claimed by the appellant. No effort is made to explain the symbol, + in the legend, but we assume that it means "at or near." It will be noted that no description of the kind, character or size of the drain-

---

*clearly* set forth the specific restrictions or other interests purchased * * *."

And Section 11 of the same Article, inter alia, says: "This construction plan [for the construction of new highways or major improvements to existing ones] shall be shown on plats or maps prepared by the Commission, which plats or maps shall show the center line of the proposed construction as well as the length and termini of the construction and the width of the necessary right of way on either side of the proposed center line, thereby showing the fee simple and *easement area necessary* for acquisition by the Commission." (All emphasis ours.)

age structures is contained in the legend, nor is the number thereof named. The legend, likewise, fails to state whether the drainage structures will be on the north or south side of the road, or on both; and paragraph (E) in purporting to grant "the right to create use and maintain on or across the adjacent land of the 'GRANTORS' such waterways and/or inlets and outlets as are necessary in the opinion of the State Roads Commission," unaided by proper hatching or a particularized description, fails utterly to identify that portion of appellees' land, or the interest and estate therein, intended to be utilized by the appellant. It does not specify what amount of appellees' land the appellant intended to use in dispersing the water, nor the amount of water to be collected and diffused. If the amount of water to be collected and dispersed were relatively small probably an easement over a small area would suffice for appellant's purposes, but if the quantity of water were large, it might require the acquisition of a fee simple title to a substantial area. Cf. *Friendship Cemetery v. Baltimore,* 197 Md. 610, 618, 81 A. 2d 57. The record does disclose that in the place of the previous drainage system, which carried drainage water from the southern side of the road under the road and deposited it on the north side, the appellant has now adopted a drainage design that collects water from both sides of the road for a substantial distance (that collected on the north side alone requires a 24-inch pipe to take it to the south side) and dumps it directly onto the appellees' land with resultant injury to a rather large area thereof.

This Court pointed out at least as early as 1905, in the case of *Roberts v. Roberts,* 102 Md. 131, 154, 62 A. 161, that the object of Section 5 of Article 21 is "to require sufficient notice to the public and certainty as to what is conveyed." And we may add that the same objective is anticipated by Article 89 B, Sections 8 (c) and 11, mentioned above. The statement in the *Roberts* case has been the consistent holding of this Court, both before and after that decision.

One of these decisions, *McDonough v. Roland Park Co.,* 189 Md. 659, 57 A. 2d 279, involved a deed that granted 30 acres of land, but purported to reserve therefrom "the grave-

yard situated upon said above described parcel of ground the same to be fifty feet square * * * with free ingress and egress thereto at all times hereafter * * *." It was not shown that a graveyard had ever existed on the land. After reviewing previous Maryland cases, the Court, in holding that this reservation did not describe the location of the graveyard sufficiently to identify it, said: "To hold this reservation still in effect would be to hold that any part of the 30 acres conveyed by the deed was subject to the reservation, and would cloud the title to the whole 30 acres." [2] Much of this language could be applied to the facts in the case at bar. If the appellant, under its present deed, can destroy or seriously impair the usefulness of an undescribed substantial portion of the appellees' property, it, conceivably, is entitled to destroy, or impair the usefulness, of any portion of their said property, which would constitute a cloud on the title of all of their property. The parties, certainly, intended no such drastic result as this.

It would, indeed, be unusual if the instruments involved herein were sufficient to convey notice to the public with "certainty as to what [was] conveyed," when the witness Jones, the appellant's representative from its Right-of-Way Department who necessarily was familiar with the forms of its options, deed, and plats, stated, unequivocably, that no easement was obtained from the appellees other than the slope easements, properly hatched on the plats. We hold, as did the learned chancellor below, that the terms of the option and deed and their accompanying plats are not "sufficient to identify with reasonable certainty" (in accordance with the provisions of either Article 21, Section 5, or Article 89B, Sections 8 (c) or (11) the appellant's claimed easement for drainage on the appellees' property. Consequently, the decree of the chancellor will be affirmed.

*Decree affirmed, with costs.*

---

2. For a case note on this decision, see 10 Md. L. Rev. 63; and compare Phillips v. J. F. Johnson Lumber Co., 218 Md. 531, 147 A. 2d 843.