# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed November 28, 1908.

___

___

SAMUEL J. LANAHAN ET AL.
VS.
WILLIAM LANAHAN.

___

*George R. Willis* and *James McEvoy, Jr.*, for petitioners.

*Bernard Carter, Edgar H. Gans* and *Frank Gosnell* for William Lanahan.

GORTER, J.—

Charles M. Lanahan died, intestate, on the 7th day of February, 1901, leaving surviving him his widow, Annie S. Lanahan, and four children, four daughters, Helen S., Mary S., Josephine R. and Adelaide, and one son, Charles M. His daughters have all since married. His son is still an infant.

At the time of the death of Charles M. Lanahan he was a member of the firm of William Lanahan and Son, then composed of himself and his two brothers, Samuel J. Lanahan and William Lanahan. Their business was that of wholesale liquor dealers. Letters of administration were duly granted upon the estate of Charles M. Lanahan, to his uncle, Thomas M. Lanahan, and to his brother and partner, Samuel J. Lanahan.

On the 31st January, 1901, according to custom, a statement was made out, showing, on one side thereof, the assets, amounting to $2,909,264.34, and on the other under the head of liabilities, the amount of assets to which each of the firm was entitled. The sum credited to Charles M. by the account was $1,017,113.

On May 27, 1902, the original bill in this case was filed. It recited that at the time of the death of Charles M. Lanahan, the whiskey in bond had been carried on the books of the company at its cost value, viz.: $1,685,652.30, which was the value stated in the account referred to made just prior to his death. That on October 1st, 1901, the administrators with the knowledge, consent and approval of the widow of Charles M. Lanahan had sold his interest in the stock of whiskey then on hand, that is on hand on October 1, 1901, for $74,466.94 more than the value of his then portion, as shown by the aforesaid account or balance sheet. To that extent the market value exceeded the book account value. There had, however, been used in the time between the death of Charles M. Lanahan and the 1st of October, 1901, some of the whiskey on hand when the balance sheet was made out, which the bill declared was otherwise to be accounted for.

The bill further recited that between the death of Charles M. Lanahan, and the 29th of March, 1902, including the sum of $74,466.94, the surviving partners had paid to the administrators in money and securities the sum of $1,070,381.95, which with the interest and increment obtained by the administrators upon the funds so paid to them, while in their hands undistributed, amounting to $9,474.47, had been distributed in the first and second administration accounts passed by said administrators in the Orphans' Court. That since March 27th, 1902, the administrators have received from the surviving partners the sum of $7,490.44, making the total sum received by the administrators $1,070,381.95 plus $7,490.44, or $1,077,872.39.

The purpose or object of the bill is disclosed in its eighth and ninth paragraphs.

In the eighth paragraph it is said: That it has been considered to be for the interest of the estate of the said Charles M. Lanahan, and of all interested therein, and on all accounts desirable, that the surviving partners or

present firm of William Lanahan and Son, should become purchasers, for a proper consideration, of the whole interest and share of the said Charles M. Lanahan, deceased, in all the partnership property and assets and all rights and claims of every description of his representatives in, to and in consequence thereof, they assuming all debts and obligation of the late firm. And that it has been the particular aim and effort of Thomas M. Lanahan, in view of the relation he occupied to the subject, as administrator without pecuniary interest in the question, to arrive at a just and due determination as to the sum of money, which in addition to said sum of $1,077,872.39 so already received by said administrators from said surviving partners, would be a full or adequate sum or price to be paid by the said surviving partners for the entire interest and share of the said Charles M. Lanahan in said partnership and in its assets and property, and in the settlement and satisfaction of all claims of his personal representatives against them arising out of the same. And as the Safe Deposit and Trust Company has been appointed guardian of the two minor children, and trustee of each of the adult children by deeds made by them; and also because of the skill and experience of the officers of said company in matters of this character, he, Thomas M. Lanahan, deemed it proper to consult with them as to said contemplated adjustment and settlement.

In the ninth paragraph of the bill it is stated, that Thomas M. Lanahan, administrator, who is herein supported by the advice, approval and consent of the Safe Deposit and Trust Company of Baltimore, has on behalf of the estate and personal representatives of said Charles M. Lanahan, deceased, agreed with the said Samuel J. Lanahan and William Lanahan, surviving partners as aforesaid, that the latter shall under the authority and sanction of this Honorable Court, by payment to the administrators of the sum of $138,000 in addition to the sum of $1,077,872.39 heretofore paid as aforesaid, purchase and acquire all the share and interest of the said Charles M. Lanahan, deceased, and his personal representatives in all the partnership property, business, assets and rights of every description of the said partnership, of which he was a member, and of all claims of his estate arising out of the same, and the approval of the Safe Deposit and Trust Company of Baltimore to the said settlement was given, as shown by the certificate filed with the bill. The bill prays that the business of the said partnership between the three be wound up and closed under the jurisdiction and direction of the court, and that the court may authorize and approve the said proposed partnership, adjustment and settlement, and authorize and direct the administrator, upon being paid the $138,000, to assign and transfer to Samuel J. Lanahan and William Lanahan, all the share and interest of Charles M. Lanahan, deceased, and his personal representatives in all assets, good-will, trade-marks, and other property, choses in action and demands and rights of every kind, of the said partnership of William Lanahan and Son, of which the said Charles M. Lanahan, in his lifetime, was a member * * * such payment so to be made, in addition to the sum of $1,077,872.39, in full settlement, payment and satisfaction of all interest of the said Charles M. Lanahan, and his personal representatives, in said partnership, its business, assets and property, and of all claims of him or them against the said Samuel J. Lanahan and William Lanahan, arising out of the same, or the winding up of said partnership.

With the bill was filed the certificate of the Safe Deposit and Trust Company. On the same day the answer of William Lanahan, the defendant, admitting the facts and the submission for a decree were filed, and the decree signed.

The decree approves of the settlement and authorizes and directs the administrator upon the payment of the $138,000, to transfer and assign all the interest of Charles M. Lanahan, in the late firm of William Lanahan and Son, to his surviving partners.

It will thus be seen that an adjustment or settlement was made by the administrators of Charles M. Lanahan, with the surviving partners of the firm of William Lanahan and Son.

That at the time this settlement was made there had been paid by the surviving partners, the amount due to Charles M. Lanahan, as shown by the balance sheet already referred to, plus the $74,000 excess of market value

over balance sheet value for the whiskey in bond, less $12,000; and that by the settlement the administrators were to convey to the surviving partners, in consideration of the payment of the sum of $126,000, more than the interest of Charles M. Lanahan, as shown by the balance sheet plus the $74,000 excess of actual or market value over balance sheet value of whiskey in bond October 1, 1901.

The petition which I am now called to pass upon was filed in this court on July 6, 1908, by Adelaide Brennan and George R. Willis, the present administrators of Charles M. Lanahan, Samuel Lanahan having died on January 30, 1908, and Thomas M. Lanahan, having died on April 14, 1908. It asks the permission of this court to file a bill of review so that the proceeding in this case may be reopened and a full examination had, under the direction of the court, of all the facts and circumstances surrounding the said settlement of the interest of Charles M. Lanahan in the co-partnership property and a strict account thereof had.

Upon this petition an order nisi was passed on July 7, 1908, directed to be served upon William Lanahan, the defendant in the original bill. On July 17, 1908, William Lanahan filed a demurrer to the petition.

The case has been most fully and ably discussed upon the several grounds of defence to the petition, but it seems to me, that we are met at the threshold with a question of procedure, and that is, as to whether the petition makes out a case for a bill of review. It is stated in the note to Section 920 of Fletcher's Equity Pleading and Practice, that there are but three grounds upon which a bill for review can be sustained. They are: (1) Error of law apparent upon the face of the decree and the pleadings and proceedings upon which it is based, exclusion of the evidence; (2) New matter which has arisen since the decree; (3) Newly discovered evidence, which could not have been found or produced by the use of reasonable diligence, before the decree was rendered. Mr. Miller in his Equity Procedure, Section 293, divides the causes for which a bill of review will lie into two classes:

(1) For error of law apparent on the face of the proceedings.

(2) For new matter discovered since the decree was passed.

Whether the second class as given by Miller includes the second and third classes as given by Fletcher in the note, or excludes the second and only includes the third, it is not necessary to determine. Mr. Miller discusses the subject under the two headings:

(1) "Bill of review for error of law."

(2) "Bill of review for newly discovered evidence."

The bill of review is confined to these two classes of cases.

It is a well-known law that a decree before enrollment is subject to the discretion of the court. After it is enrolled it is supposed to have a certain degree of conclusiveness about it. Notwithstanding this, it seems that it can be vacated it might almost be said, whenever the purposes of justice so require. The methods by which an enrolled decree can be vacated may be classed as follows:

1st. By a bill of review.

2nd. By an original bill for fraud.

3rd. By petition in case not heard upon the merits, and in which it is alleged the decree was entered by mistake or surprise, or under such circumstances as shall satisfy the court, in the exercise of a sound discretion, that the enrollment ought to be discharged and the decree set aside.

Straus vs. Rost, 67 Md. 479.

The permission of the court is not necessary in order to resort to the second and third methods of attacking an enrolled decree. It is only when the first method is resorted to that it is necessary to obtain the permission of the court before filing the bill, and then only when the attempt is made to annul or alter the decree on the grounds of newly discovered evidence. It is upon the last grounds that the petitioners seek to vacate the decree in this case. By their petition they seek at the hands of the court, the right to file a bill of review, to set aside the decree on the grounds of newly discovered evidence. Their petition has been demurred to.

The question, therefore, presented for determination is, does the petition set forth such facts as would justify the court in authorizing a bill of review to be filed? This brings us to the allegations of the petition. It is stated

in the petition that Charles M. Lanahan was a partner in the firm of William Lanahan & Son, and as such entitled not only to his share of the tangible assets as shown by the account already referred to, but also entitled to a one-third interest in the good will, trade-marks, trade names and brands, that had been used by the firm. That these rights were extremely valuable, the trade-mark, "Hunter" alone, at the time being worth, and valued by the survivors a short time after the decree, at $1,000,000.

That this valuable interest which Chas. M. Lanahan was entitled to in these intangible assets of the firm, was not considered in the settlement "and no allowance was made therefor, or if any allowance was made it was of such an amount as in no wise represented the true value thereof."

That the officers of the Safe Deposit and Trust Company were induced to approve of the settlement, by reason of fraudulent representations made to them by the surviving partners and the administrators, that Charles M. Lanahan had no interest in these brands or trademarks, and that they were the property of the other two brothers, which representations were believed by the officer of the company. That Thomas M. Lanahan was likewise deceived by the surviving partners of Charles M. Lanahan into believing that his estate had no interest in said trade-marks, trade-names and brands of William Lanahan & Son, and that the said settlement so agreed to by him was predicated upon the belief of this fact. That a wilful fraud has thus been perpetrated upon the estate of Charles M. Lanahan, and upon the court in regard to the aforementioned settlement of the decedent's estate.

If Samuel J. Lanahan and William Lanahan procured the adjustment and settlement that was made between them and the estate of Charles M. Lanahan, by fraudulent representations made to Thomas M. Lanahan and to the officers of the Safe Deposit and Trust Company such as would cause a court to set the same aside, upon a bill filed for that purpose, why would not a bill filed for that purpose, under the circumstances of this case, accomplish the like result? If the officers of the company and Thomas M. Lanahan were deceived into making the settlement, the court, whose decree was passed solely upon the case as stated to it by them in the bill was also deceived.

The decree is predicated upon the bill, and any fraud that would vacate the transaction which the court by the decree was called upon to ratify, would certainly vitiate the decree also. In other words, I do not see that the decree, which was simply passed to ratify the transaction, would or could have the effect; in any degree, of protecting the same when fraudulent, from attack. The decree, which authorized and directed the settlement, like the settlement itself, depended upon the integrity of the transaction. The transaction if weakened or destroyed by fraud, could not be strengthened or saved by the decree. An original bill for fraud under the circumstances, would seem to be the proper method to adopt to obtain the relief sought by the petitioners. I say this without giving, or intending to give, any intimation as to whether or not the allegations of fraud as set out in the petition, would be sufficient to support an original bill for fraud.

But does the petition make out a case for a bill of review based upon newly discovered evidence? What must be shown in the petition, asking leave of the court to file a bill of review is well settled.

In Miller's Equity Procedure, Section 296, p. 266, it is said: "The petition must set forth the new matter and be sustained by the affidavit of the petitioner that he did not know of the matter before the decree was made."

And in Section 297, p. 266, it is said: "The matter relied on must not only be new, but such as the party by reasonable diligence could not have known at the time the testimony was taken. The party must make it appear that due and reasonable diligence would not have enabled him or those under whom he claims to make the defense that he seeks to avail of by a bill of review. The question is not only what the party "knew," but also what—using due diligence he might—have known. "So that if the new proof were either known to the party applying in time to be used when the decree was passed, as are facts of which he could have acquired the knowledge by the use of reasonable diligence, leave would not be granted. This qualification is said

to be of equal importance with the rule itself."

In the first place, a bill of review for newly discovered evidence is the proper method of opening a decree, generally if not only, where the case has been heard by the court on the evidence, after the decree is enrolled, and new evidence has been discovered, which had it been known and introduced at the trial, would have produced a different result.

While a bill of review may not be confined exclusively to cases of this character, I have come across no case that extends its application to a case like the one under consideration, where no evidence was offered, and where no controverted question was determined. The proceedings in this case were simply to get the sanction and ratification of the court to a settlement that was made 'by those under whom the petitioners claim with the surviving members of the firm of William Lanahan & Son.

No such question as the right of Charles M. Lanahan to the goodwill, brands and trade-marks, of the firm of which he had been a member, was passed upon or considered, or, indeed, suggested to the court at the time the decree was passed. The decree, based on the statement in the bill, simply ratified the settlement that Thomas M. Lanahan as administrator had made; and to which the Safe Deposit and Trust Company had given its unqualified approval.

It would seem the most that could be done in this case would be to rescind the decree. Could the court in this case, the scope of which was only to take jurisdiction of the administration of the estate of Charles M. Lanahan for the purpose of authorizing the settlement, adjudicate the rights of Charles M. Lanahan to the good-will and to the various brands and trademarks used by the firm of which he had been a member? I think not. Further and other proceedings would be necessary to determine the rights of the parties.

The petition does not allege that any evidence has been discovered since the decree, which was not known to Thomas M. Lanahan, under whom the petitioners claim. I leave out of consideration entirely the other administrator, because the petitioners would not be bound by the knowledge he may have had. What is the newly discovered evidence relied upon? The petitioners set forth in their petition, and make them a part thereof, the proceedings in the Circuit Court of the United States for the Eastern District of New York in the case of Lanahan vs. Kissel.

They also quote from and make part of their petition, the various applications and proceedings taken by the firm of William Lanahan & Son, in regard to registering their several trade marks.

There is not a word in the petition to the effect that Thomas M. Lanahan was not aware of every fact set forth in the proceedings in Lanahan vs. Kissel, and of all the proceedings in regard to trade marks that are referred to in the petition.

In Miller's Equity Procedure, Section 296, p. 366, it is said, "The petition must set forth the new matter and be sustained by the affidavit of the petitioner that *he did not know of the new matter before the decree was made.*" To the same effect is Story's Equity Procudure, Section 413, and Fletcher's Equity Pl. and Pr., Section 922.

Nor is it stated or shown in the petition, that Thomas M. Lanahan could not have learned, by the exercise of reasonable diligence, every fact set forth in the case of Lanahan vs. Kissel, and could not have discovered all the proceedings taken in regard to the trade-marks, when he made the settlement.

I have read carefully the extracts from both, contained in the petition, and see no reason why Thomas M. Lanahan could not have become acquainted with every fact or circumstance therein set forth, when he concluded the adjustment and settlement that was made. And certainly the petition does not aver that he could not with reasonable diligence have done so.

In Miller's Equity Procedure, Section 297, it is said: "The party must make it appear 'that due and reasonable diligence would not have enabled him,' *or those under whom he claims,* to make the defence that he seeks to avail of by the bill of review."

I do not think it is necessary, or indeed proper for me to express my opinion, as to whether the averments in the petition, taken in connection with all

the facts therein and thereby disclosed, make out such a case of fraud as would justify a Court of Equity in rescinding the decree, and setting aside the settlement.

Nor is it necessary to attempt to reach any conclusion as to the rights of Charles M. Lanahan in the good-will, trade names, trade-marks, brands and secret formula used by the firm prior to his death, or to ascertain the value thereof, or why the $126,000 in excess of the value of the tangible assets were given.

The petition, in my opinion, fails to make out a case for a bill of review. The demurrer will, therefore, be sustained.